Sophie **RUSKAY**, Plaintiff,

v.

Julius **JENSEN**, **III** et al., Defendants
(and three other consolidated actions).

Nos. 71 Civ. 3169, 71 Civ. 4424, 71 Civ. 3865 and 71 Civ. 4352.

United States District Court,
S. D. New York.
March 25, 1972.

⚷38

Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs; William E. Haudek, New York City, of counsel.

Valicenti, Leighton, Reid & Pine, New York City, for defendants; Albert D. Jordan and Elliot Paskoff, New York City, of counsel.

METZNER, District Judge:

The defendants move pursuant to Rule 56(b), Fed.R.Civ.P., for summary judgment on the ground that all of the claims asserted in these four consolidated stockholders' derivative suits are barred by a judgment of this court entered on June 25, 1970 in an earlier stockholders' derivative suit.

The named plaintiffs in each of the four present actions are shareholders of United Funds, Inc. [United], and were shareholders during the time of the transactions complained of. They sue on behalf of United and all United shareholders.

United is a mutual fund registered under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq. [the Act], as an open-end management investment company. As of June 1969, it had assets in excess of $2 billion and more than 500,000 shareholders holding more than 275 million shares of stock.

Defendant Waddell & Reed, Inc. [W & R] was the investment adviser for United in 1969 and for many years prior thereto. During this same period of time W & R also acted as the principal underwriter for United's shares. Defendants Roach, Waddell, Merriman and Valicenti were directors and officers of W & R during this time.

Defendant Continental Investment Corporation [CIC] is a Massachusetts corporation. CWR Corporation, also a Massachusetts corporation, is a wholly-owned subsidiary of CIC. CIC acquired over 97% of the outstanding shares of W & R, merged W & R into its subsidiary, CWR, and changed the latter's name to Waddell & Reed, Inc. [W & R/Mass.]. Defendants Jensen, M. J. Wallace and N. W. Wallace are directors and officers of CIC.

All four complaints, with some exceptions to be mentioned later, are basically the same and seek, in essence, to recover profits made by W & R shareholders when they sold their stock to CIC.

CIC's acquisition of W & R had its origins in a contract executed in early

1969 between CIC and the holders of 61.69% of W & R's voting stock, including defendants Waddell, Merriman and Roach. Pursuant to that contract, CIC agreed to purchase this block of stock at a price of $80 per share and to make a tender offer for the remaining outstanding shares of W & R at the same price. At the time the contract was executed, W & R stock had a par value of $1 per share and a net asset value of approximately $18 per share.

The parties to the contract understood that under the Act the advisory and underwriting agreements between United and W & R would automatically terminate upon acquisition of W & R by CIC. Therefore, CIC's obligations were expressly conditioned upon reinstatement by United's shareholders of the advisory agreement and reinstatement by United's directors of the underwriting agreement.

On April 18, 1969, United's management called a shareholders' meeting for June 3, 1969, and sent to all fund shareholders a proxy statement describing the arrangement with CIC, seeking approval for reinstatement of the advisory agreement upon consummation of the deal, and soliciting votes for re-election of the 15 incumbent directors of United. On June 3rd, the shareholders approved reinstatement of the advisory agreement and re-elected the 15 incumbent directors.

The complaints charge that the excess of purchase price over net asset value of the W & R shares constitutes payment for W & R's fiduciary positions as investment adviser and principal underwriter for United. It is claimed that this sale of fiduciary offices is illegal and that the excess, amounting to $62 per share, should have been paid to United rather than to the stockholders of W & R.

It is further alleged that the April 18th proxy statement was materially false and misleading in that it failed to reveal that United and its shareholders were entitled to the profits to be made upon the sale of W & R shares and by representing that CIC contemplated no changes in the board of directors of United or in the management of W & R upon consummation of the acquisition. The complaints charge that because of these defects in the proxy statement the reinstatement of the advisory and underwriting agreements was void and the defendants must account to United for all fees received under the reinstated agreements.

One of the plaintiffs makes an additional claim based on alleged misrepresentations in proxy material sent to United's shareholders on April 30, 1971. This proxy material sought approval of an amendment to the advisory contract to increase advisory fees paid by United to the investment adviser. The complaint charges that the stockholders' subsequent approval of the amendment was void because it was based on misrepresentations in the proxy material.

The defendants claim that a judgment of this court entered on June 25, 1970 in two earlier stockholders' derivative suits is res judicata on all the issues raised by the present plaintiffs.

The first of these two actions, Horenstein v. Waddell & Reed, Inc., 67 Civ. 4175, was commenced on October 26, 1967, and the second, Ruskay v. Merriman, 69 Civ. 276, on January 23, 1969. The initial complaints in both suits were largely identical and charged that W & R had breached its fiduciary duty to United by channeling portfolio transactions through a wholly-owned subsidiary which acted as broker for United without reducing the management fee charged United. Allegations were also made that transactions for United were used by W & R to gain reciprocal trade and give-up agreements for W & R with other brokers.

In May 1969 plaintiffs in the Horenstein/Ruskay actions, having learned of CIC's acquisition offer, moved and were granted leave to file supplemental complaints alleging that the W & R shareholders were going to

receive an excessive price for their shares. It was alleged that the price was largely a result of the ability of the investment adviser of United to earn substantial illegal profits in its management of the fund, as alleged in the principal complaint. It was claimed that these illegal profits resulted from a breach of fiduciary duty, and therefore the premium paid for them was rightfully the property of United.

In answer to the supplemental complaints, defendants denied these allegations, and stated that the shareholders approved the transaction after "full and fair disclosure" in the proxy statement by voting for the reinstatement of the advisory agreement.

On December 24, 1969, the parties in the Horenstein/Ruskay actions entered into a stipulation of settlement whereby the defendants agreed to pay United a total of $650,000 in exchange for dismissal of the complaints with prejudice. On June 25, 1970, after a hearing pursuant to notice to stockholders, Judge Lasker entered judgment approving the settlement and dismissed the complaints on the merits and with prejudice as to "any and all claim or claims, or causes of action, or parts thereof which are or might have been asserted with respect to the matters and transactions alleged in the said complaints. . . ." On October 10, 1970, United executed a release discharging all defendants named in the Horenstein/Ruskay actions from any and all claims United had or might have against them "for or by reason of any of the matters or transactions recited or described in the complaints, supplemental complaints and/or pleadings filed by the plaintiffs in the above entitled actions. . . ."

■ Any discussion of the issues presented by this motion must begin with the classic statement of the rules of res judicata and collateral estoppel set forth in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876). According to that case, the judgment in a prior suit, if rendered on the merits, is res ju-

dicata in a subsequent action between the same parties on the same claim or cause of action and operates as an absolute bar not only as to every ground of recovery or defense actually presented in the prior action, but also as to every ground which might have been presented. However, where the second action is upon a different claim or demand, the prior judgment operates as an estoppel only as to those issues actually litigated and determined in the prior suit. See also Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).

These rules raise five basic questions:

(1) Were the parties in the prior action the same as in the present one?

(2) Did the prior action go to judgment?

(3) If so, was that judgment on the merits?

(4) Were the claims or causes of action in the prior suit the same as in the present one?

(5) If not, what issues were actually litigated and determined in the prior suit?

[2] The first three of these questions are easily disposed of in the present litigation. Both the Horenstein/Ruskay actions and the instant suits were brought derivatively on behalf of United and its shareholders, and therefore the plaintiffs in all actions are the same. The real party in interest in these suits is the fund and its shareholders, even though the named plaintiffs might be different in each case. Of the defendants, W & R Merriman, Roach and Waddell are parties in all the actions. The effect of Horenstein/Ruskay on those who were not named in that suit will be discussed later.

■■ As to the second question, on June 25, 1970 a judgment was entered in the Horenstein/Ruskay actions approving the settlement and dismissing the complaints as to all claims which were or might have been asserted in them with respect to the matters and transactions alleged. Such a settlement decree is a judgment on the merits and is given full res judicata effect in a subsequent suit between the same parties on the same causes of action as those compromised in the settlement. Smith v. Alleghany Corp., 394 F.2d 381, 391 (2d Cir.), cert. denied, 393 U.S. 939, 89 S.Ct. 300, 21 L.Ed.2d 276 (1968); Stella v. Kaiser, 218 F.2d 64, 65 (2d Cir. 1954), cert. denied, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955). However, the collateral estoppel effect of a settlement decree is greatly limited. Since a settlement such as the one in Horenstein/Ruskay eliminates the need to have issues actually litigated and is unaccompanied by findings of fact or conclusions of law, it generally cannot bind the parties as to any issues which might arise in a subsequent lawsuit on a different cause of action. Lawlor v. National Screen Service Corp., *supra*.

This brings us to the heart of the present controversy: whether the causes of action in Horenstein/Ruskay are the same as those here. A determination of this issue requires analysis of the various claims asserted in the present and prior suits.

In the Horenstein/Ruskay actions two basic claims were raised:

1. A claim, asserted in the principal complaints, to recover illegal profits made by W & R as manager of United;

2. A claim, asserted in the supplementary complaints, to recover the premium to be paid W & R shareholders by CIC as payment for past and future illegal profits obtainable as manager of United.

In the present litigation, three distinct claims can be culled from the complaints:

1. A claim for the excess of purchase price over net asset value of the W & R shares, based on a charge that this excess constitutes payment for W & R's fiduciary offices as investment adviser and principal underwriter for United;

2. A claim for profits made under the reinstated advisory and underwriting agreements, based both on misrepresentations in the proxy statement of April 18, 1969, and on the illegality of the sale of fiduciary offices;

3. A claim for profits made under the advisory agreement as amended in 1971, based on misrepresentations in the proxy material of April 30, 1971.

The major dispute between the parties here is whether the first claim in the present suits is identical to the claim asserted in the supplemental complaints in the Horenstein/Ruskay actions. The court concludes that it is, and it is therefore barred by res judicata.

■■ Two causes of action are the same if they allege "the violation of but one right by a single legal wrong." Baltimore Steamship Co. v. Phillips, *supra* 274 U.S. at 321, 47 S.Ct. at 602. Where the claims for relief in two lawsuits depend on the same operative facts and pertain to the same disputed transactions, they constitute the same cause of action. Saylor v. Lindsley, 391 F.2d 965, 969 n. 6 (2d Cir. 1968); Engelhardt v. Bell & Howell Co., 327 F.2d 30, 33 (8th Cir. 1964); Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464, 470 (3rd Cir. 1950), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951).

■ Such is the case here. Both Horenstein/Ruskay and the present case involve a claim for the same premium paid in the same sale of the same stock in the same corporation pursuant to the same contract between the same parties as part of the same tender offer. The one right asserted in both actions is the right of United to the profits made upon sale of its investment adviser and principal underwriter. The single legal

wrong is the breach by defendants of their fiduciary duty to refrain from making personal profits upon a sale of assets properly belonging to United.

The fact that the settling plaintiffs alleged a formula for computing damages different from that urged here is not a distinguishing factor between the two sets of cases. In the former the premium paid for the stock was alleged to be a capitalization of the illegal profits which could be made from the management contracts. In the instant cases the premium is alleged to have been paid for reinstatement of the contracts under which W & R was making its illegal profits. However denominated, it is the same asset which is in dispute in both actions. The management contracts were inseparable from the profits which could be made from them.

█ If the plaintiffs here were to be successful in their claims, United would be recovering the same premium twice. Obviously such a result is inconceivable. A plaintiff "cannot even split up his claim . . . ; and, *a fortiori,* he can not divide the grounds for recovery." United States v. California & Oregon Land Co., 192 U.S. 355, 358, 24 S.Ct. 266, 267, 48 L.Ed. 476 (1904).

The instant case presents a situation similar to the one in Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). In that case, plaintiff sought to avoid the res judicata effect of a prior judgment by arguing that the statute pursuant to which the court had acted was subsequently declared unconstitutional in an unrelated case. The Supreme Court rejected this argument, stating that since plaintiff had an opportunity in the prior proceeding to litigate the constitutionality of the statute and failed to do so, it was bound by the prior determination.

█ When the supplemental complaints in the Horenstein/Ruskay actions were filed, the leading authority on the accountability of an investment adviser for profits made on the sale of its shares was Securities and Exchange Commission v. Insurance Securities, Inc., 254 F.2d 642 (9th Cir.), cert. denied, 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed. 2d 64 (1958). This case held that a management contract is not an asset of the fund, and that a premium received upon the sale of shares in the investment adviser does not constitute a sale of fiduciary offices. Rather than conducting a frontal assault upon the *Insurance Securities* rule, the Horenstein/Ruskay plaintiffs sought to skirt the issue. They scrupulously avoided using "fiduciary offices" language in their supplemental complaints, instead terming the premium a payment for illegal profits. The memoranda submitted in support of the proposed settlement show that one reason for settling was plaintiffs' recognition that the *Insurance Securities* case made recovery on the supplemental complaints doubtful. Then in 1971 the Second Circuit decided Rosenfeld v. Black, 445 F.2d 1337 (2d Cir. 1971), appeal pending, which rejected the *Insurance Securities* rule and held that stockholders of an investment adviser must account to the fund for any profits received upon sale of their shares. In the wake of this decision, the present plaintiffs initiated their lawsuits. However, as in the *Chicot* case, *supra,* it is clear that plaintiffs in Horenstein/Ruskay had an opportunity to attack *Insurance Securities* and chose not to do so. Now that *Insurance Securities* has been successfully challenged, plaintiffs cannot reap the benefits of a claim which was consciously avoided before. When a plaintiff has two alternate remedies available to him upon the same cause of action, he may not reserve one and sue upon the other. A judgment on one will be a bar to a later suit upon the other. United States v. California & Oregon Land Co., *supra*; Burns Bros. v. Central R.R. of New Jersey, 202 F.2d 910, 913 (2d Cir. 1953).

Plaintiffs urge that proof of the claim here would require evidence different from that needed to prove the first actions. The "same evidence" test may be

useful as a positive test for determining the identity of claims, but it is not valid as a negative test. Engelhardt v. Bell & Howell Co., *supra* 327 F.2d at 34.

■ It will often be true that a decision on one theory of recovery will have no bearing on the determination of another. This does not mean that each theory states a distinct cause of action. For example, in Baltimore Steamship Co. v. Phillips, *supra,* the Court held that a claim of negligence based on the use of defective machinery was identical to a claim of negligence in regard to the same injury against the same defendant based on negligent operation of that machinery. Nonetheless, it cannot be disputed that a determination that the machinery was not defective would not have precluded a finding that it was operated negligently.

Plaintiffs further contend that, in any event, the judgment in Horenstein/Ruskay cannot bar their claim insofar as it is asserted against those defendants who were not parties to the earlier suits. They rely on the doctrine of mutuality of estoppel. However, the mutuality requirement has been greatly diluted in the Second Circuit by Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). The court there held that in a proper case mutuality should not be used to preclude defensive use of res judicata against a person who was a party to the earlier litigation. This approach has recently been approved by the United States Supreme Court. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

■ The present case is a proper one for dispensing with the mutuality requirement. The plaintiffs in Horenstein/Ruskay chose the forum in which they litigated, had complete discovery on all issues, and voluntarily surrendered United's claims in exchange for the $650,000 settlement payment. Furthermore, they were fully aware of the role played by the present defendants who were not parties to the earlier proceeding. The participation of these defendants in the challenged transactions was not independent of that of the other defendants, and in fact in the present complaint they are named merely as "co-conspirators with the Horenstein/Ruskay defendants.

■ In any event, regardless of questions of mutuality, the court holds that the release executed by the plaintiffs in Horenstein/Ruskay has discharged all present defendants, including those who were not parties to that action. W & R, its officers and directors are within the express terms of the release.

■ The other defendants, CIC and persons associated with it, may also take advantage of the release. The effect of a release is governed by the intentions of the parties. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 342–348, 91 S.Ct. 795, 28 L. Ed.2d 77 (1971). In the present case the conclusion is inescapable that the parties in Horenstein/Ruskay intended their release to discharge all persons involved in the CIC acquisition transaction. The memoranda in support of the settlement point out that a major factor motivating the defendants to settle was the imminent sale of their stock to CIC. The defendants desired to remove all potential clouds on that stock before transferring it to CIC. It is inconceivable that the parties could have intended to remove liability from the sellers only to cast it upon the buyers. The plaintiffs must have intended to release all parties to the transaction.

This leaves for consideration the remaining two claims asserted by plaintiffs in the present cases. As mentioned above, these claims relate to profits made under the advisory and underwriting agreements between United and W & R after the CIC acquisition and profits made under the amended 1971 advisory agreement.

It is clear that these claims constitute causes of action separate and distinct from any asserted in the Horenstein/Ruskay suits and are not barred by the prior actions.

Defendants' motion for summary judgment is disposed of in accordance with the above opinion.

So ordered.