John P. CAHILL, Plaintiff,

v.

ARTHUR ANDERSEN & CO., a
Partnership Enterprise,
Defendant.

No. 85 Civ. 10075 (MGC).

United States District Court,
S.D. New York.

Dec. 17, 1986.

John P. Cahill, pro se.

Stein, Zauderer, Ellenhorn, Frischer & Sharp by Bertrand C. Sellier, New York City, for defendant.

OPINION

CEDARBAUM, District Judge.

This action arises from a series of events which culminated in plaintiff's sale on January 2, 1981, of approximately 35% of the issued and outstanding shares of Corporate Time-Sharing Services, Inc. ("CTS"). Plaintiff, John Cahill ("Cahill"), alleges that the defendant, Arthur Andersen & Company ("Andersen"), participated in a conspiracy to remove him from his position at CTS as an officer, director and shareholder and to gain unlawful control of the company. Plaintiff seeks damages in excess of one billion dollars. For the reasons set forth below, defendant's motion to dismiss the complaint, which I have treated as a motion for summary judgment, is granted.

*Background*

Cahill was a co-founder of CTS and served as an officer and director of the company from its inception in September 1976 until October 1980, when he alleges he was forcibly removed. He was also a major shareholder of CTS until January 1981, when he sold his shares to Robert Chambers ("Chambers"), another officer of the company. Plaintifff claims that the illegal activities of Andersen and its co-conspirators were intended to force him out of CTS and enable them to gain control in order to transform the company into a public corporation. Plaintiff alleges that, to accomplish this end, "the conspiring shareholders and directors destroyed plaintiff's office, physically assaulted him with armed force, summarily terminated his salary in violation of his employment contract and accused the plaintiff of misuse of corporate funds through his business expense account while preventing him access to his expense receipts with irresistible force." Amended Complaint, ¶ 12. Plaintiff also claims that he was threatened with legal action if he should oppose the conspirators' scheme and that "stock or jail" became the conspirators' "oft pronounced ultimatum."

On January 2, 1981, plaintiff sold his holdings in CTS [1] to Chambers for $75,000

---

1. CTS changed its name to CTEK Software in 1983.

and entered into a consulting agreement with CTS whereby he was to receive approximately $500,000 for his services over a ten-year period. The agreement also referred to plaintiff's alleged misuse of corporate funds and provided that plaintiff would agree to an examination by Andersen into those allegations. It also contained a restrictive convenant prohibiting plaintiff from competing with CTS during the period of the consulting agreement. Plaintiff claims that the "false" allegations of misuse of corporate funds forced[2] him to sign the agreement and to sell his CTS shares. At the same time, plaintiff also agreed to sell his interest in a related partnership for $1,000. Plaintiff contends that the price he received for both the stock and the partnership interest were far below market value. To determine the value of his shares, Cahill relies on a preliminary prospectus published on or about August 9, 1983, which was prepared for a public offering of CTS shares. Plaintiff asserts that because on August 9, 1983, less than 50%, or 750,000 shares ($450,000 worth), were offered to the public at $6.00 per share, 100% of the CTS stock would have been worth $9,000,000 at that time. Plaintiff also claims that on August 9, 1983, CTS's annual revenues were half of what they had been on January 2, 1981, when he sold his stock. Accordingly, plaintiff reasons that, in January 1981, the total value of CTS stock was $18,000,000 and that his roughly one-third holding was worth $6,300,000 (35% of $18,000,000). As a result, the purchase price of $75,000 which

plaintiff actually received allegedly constitutes "robbery, extortion, securities fraud, and grand larceny to the tune of $6,225,-000." (Amended Complaint, ¶ 40).

*Plaintiff's Prior Action Against Chambers, et al.*

In 1982, plaintiff filed a complaint alleging substantially similar claims against Chambers, J. Kevin Murphy, Joseph F. Carlino, James E. Haley, Marc C. Gillen, and John Does 1–5[3] (82 Civ. 6327). In that action in this court, plaintiff claimed that the named defendants, together with others unknown to plaintiff, conspired to remove him from his position as chief executive officer of CTS by falsely accusing him of misuse of corporate funds, by entering into an unlawful shareholder's agreement without his knowledge or consent, and through numerous acts of mental and physical intimidation and coercion, including the posting of armed guards at the CTS offices and an early morning ransacking of plaintiff's office at CTS. Plaintiff claimed that he was forced by defendants to sell his shares of CTS at a price substantially below market value, to resign from his position at CTS and forfeit his $130,000 per year salary, and to sell an interest in a related partnership for an inadequate price.

Important for the purposes of this suit, plaintiff also alleged that in conjunction with the agreement to sell his shares, he entered into a consulting agreement with CTS, again under extreme duress, which contained a provision permitting Andersen to audit his allegedly improper business

**2.** Plaintiff makes several references to illegal acts on the part of the conspirators which caused him to be intimidated and forced him to sell his shares. He claims, *inter alia,* that Chambers and Vomastek entered his office during the night of October 17, 1980 and destroyed his property; that Chambers had armed guards blocking the entrance to the CTS offices, one of whom threatened to shoot plaintiff if he entered the CTS lobby; that Chambers and Vomastek, together with an armed guard, saw plaintiff in a restaurant and that the guard drew his gun and assumed a crouching position "ready to fire into the crowded restaurant to murder plaintiff in violation of 18 U.S.C. § 1961(1)(A) and 18 U.S.C. § 1962(b) and (d)"; that Julian Jawitz, a CTS attorney, warned plaintiff in March of 1983 at the Vomastek deposition that he would be "executed" if he continued to oppose them. Ander-

sen's express role in these matters is not set forth in the complaint, although plaintiff does allege that "[t]he great perversion here is that these outrageous racketeering threats and actions have been legitimized by the presence, continuing direct participation and unlawful silence of one of the world's largest public accounting firms, defendant Arthur Andersen & Company." ¶ 29.

**3.** According to plaintiff's prior complaint, Robert Chambers, James E. Haley, and Mark C. Gillen are shareholders, directors and officers of CTS; J. Kevin Murphy is an attorney and a director of CTS; Joseph F. Carlino is an attorney who performed legal services for CTS and was elected a director of CTS.

expenses. Plaintiff contended that, despite his full compliance with the audit, Andersen failed to issue a report and that such failure was part of defendant's conspiracy to ensure that plaintiff would not expose the conspirators' illegal acts.[4]

Plaintiff asserted numerous claims for relief based on these events. The first two claims called for the rescission of his agreements with the defendants and the return of his CTS stock and the related partnership interest. The third claim requested damages in the amount of $974,000 to compensate plaintiff for the true value of the shares and the partnership interest. The fourth claim, also for rescission, alleged that the agreements were unconscionable and should be set aside. The fifth, sixth and seventh claims were based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The fifth claim asserted that defendants' conduct constituted larceny by extortion, in violation of New York Penal Law § 155.-05(2)(e) and constituted a pattern of racketeering activity as defined by 18 U.S.C. § 1961 entitling plaintiff to damages in the amount of $6,702,000 plus costs and attorney's fees. Plaintiff's sixth and seventh claims alleged that defendants' activities violated 18 U.S.C. § 1951, and 18 U.S.C. § 1341, resulting in a pattern of racketeering activity in violation of 18 U.S.C. § 1961.

On April 14, 1983, the parties entered into a stipulation of settlement which settled and discontinued plaintiff's action with prejudice. The stipulation of settlement made minor changes in the January 2, 1981 consulting agreement between plaintiff and CTS, but otherwise fully ratified and confirmed the consulting agreement and all other agreements between the parties, including the purchase price of plaintiff's stock and partnership interest. The parties appeared before the court on April 14, 1983 and submitted a proposed order to the Honorable Henry F. Werker confirming and approving the settlement. On that date, the Court satisfied itself that plaintiff was aware of the implications of the settlement.[5]

*Plaintiff's Present Action*

Plaintiff has filed this action against Andersen for damages in excess of one billion dollars based on factual allegations virtually identical to those in his 1982 complaint. The present complaint alleges three causes of action against Andersen: (i) securities fraud, (ii) illegal intermeddling in the business affairs of CTS, and (iii) violations of RICO. The defendant has moved, pursuant to Rules 12(b)(6) and 9(b), to dismiss the complaint for failure to state a claim upon which relief can be granted. As grounds therefor, defendant contends that (i) the complaint fails to state a claim for securities fraud, (ii) the complaint fails to state a claim for tortious interference with contractual relations[6] and, in any case, these claims are barred by the applicable statute of limitations; (iii) plaintiff's RICO claims are barred by the statute of limitations; and (iv) the complaint fails to comply with the requirements of Rule 9(b). Defendant also seeks an award of attorney's fees and

---

**4.** Plaintiff did not specifically name Andersen as a party in the first action. See note 7, *supra.*

**5.** The following conversation occured that day, on the record:

"THE COURT: Mr. Cahill you have been over this completely, have you?
MR. CAHILL: Yes, I have, your Honor.
THE COURT: You are satisfied with it?
MR. CAHILL: Yes, your Honor, I am.
THE COURT: You understand that your action, if I approve this, your action is completed and it will be discontinued on the record and you will have no more cause of action with respect to these Contracts?
MR. CAHILL: I understand that, your Honor.

\* \* \* \* \* \*

THE COURT: You understand that 'with prejudice' means no more on these causes of action?
MR. CAHILL: Yes, your Honor, that is very clear to me.
THE COURT: If you bring them in this court and it happens to get spun out to another judge, they will look back and they will see this, and that will be the end of it.
MR. CAHILL: I won't bring it back again. I think at this point we have reached an agreement and we are all ready to move on." (Tr. 6, 8).

**6.** The defendant has interpreted the plaintiff's second cause of action as stating a claim for tortious interference with contractual relations, which appears to be a reasonable reading of the complaint.

costs pursuant to Rule 11. Although defendant has not expressly moved to dismiss on the ground that plaintiff should be precluded by the settlement of the earlier suit from bringing this suit, defendant raises the issue in the Affidavit of Bernard Sellier submitted in support of its motion and attaches as exhibits copies of the complaint, the transcript of the proceedings before the Honorable Henry F. Werker, and the releases executed by plaintiff.

Because the parties have submitted, and I have considered in deciding this motion, matters outside the pleadings, I have treated defendant's motion as one for summary judgment under Rule 56. Both parties have had ample opportunity to present all material relevant to this motion.

*The Effect of the Prior Action*

The first issue I have considered is what effect, if any, the settlement and dismissal of the prior action should have on plaintiff's present claims. It is clear from comparison of the pleadings in the first and second actions that plaintiff is asserting substantially the same causes of action against Andersen that he asserted against the defendants in the first action. Although plaintiff has elaborated on some of the factual allegations, both suits arise from the series of events leading up to plaintiff's sale to Robert Chambers of the shares he held in CTS and his "forced" retirement from the company. It is indisputable that, had plaintiff named in the present suit any of the defendants named in his first suit, the res judicata effect of the order of discontinuance with prejudice, as well as the releases, would bar plaintiff from relitigating these claims as to those defendants.

■ A dismissal with prejudice constitutes a judgment on the merits just as fully and completely as if the order had been entered after trial, and bars future suits by plaintiff upon the same causes of action.

*Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); *Nemaizer v. Baker,* 793 F.2d 58 (2d Cir.1986). Similarly, a decree of settlement constitutes judgment on the merits, and will be given full res judicata effect in a subsequent suit between the same parties on the same causes of action as those compromised in the settlement. *Nemaizer v. Baker, supra; Smith v. Alleghany Corp.,* 394 F.2d 381, 391 (2d Cir.), *cert. denied sub nom. Smith v. Kirby,* 393 U.S. 939, 89 S.Ct. 300, 21 L.Ed.2d 276 (1968).

The doctrine of res judicata was created to promote judicial efficiency and certainty in legal relations and bars repetitive litigation on the same cause of action. *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Norris v. Grosvenor Marketing Ltd. et al.,* 803 F.2d 1281 (2d Cir.1986); *Expert Electric, Inc. v. Levine,* 554 F.2d 1227 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

I have already determined that there is an identity of issues between the first and second actions. Accordingly, the only question is whether there is sufficient identity of parties to apply the doctrine of res judicata.

■ Andersen was not a named defendant in plaintiff's first action, although arguably, Andersen was intended as one of the five "John Doe" defendants sued in that action.[7] Although the requirement of identity of parties has been abandoned for purposes of collateral estoppel against a party who had a full and fair opportunity to litigate the same issue in a prior lawsuit, *see e.g., Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), *Cliff v. Internal Revenue Service,* 496 F.Supp. 568 (S.D.N.Y.1980), courts still require mutuality for claim preclusion. But even for purposes of claim preclusion, the trend is toward a relaxation of strict

---

7. The plaintiff never identified the five "John Doe" defendants sued in the first action. It appears that plaintiff may have had Andersen in mind as one of the co-conspirators in that action since, in the complaint, he alleges that Andersen's refusal to issue its audit report was an action in furtherance of the conspiracy. However, since Andersen was not specifically named in that suit, it cannot rely exclusively on this possibility to relieve it from liability in the present action.

mutuality by a broadening of the concept of parties and their privies.

In *Ruskay v. Jensen*, 342 F.Supp. 264 (S.D.N.Y.1972), *aff'd sub nom. Ruskay v. Waddell*, 552 F.2d 392 (2d Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977), the shareholders of a mutual fund sued the corporate investment advisor, the directors and officers of the advisor, and the corporation which had acquired over 90% of the outstanding shares of the advisor and merged the advisor into its subsidiary, to recover profits made by the investment advisor's shareholders upon the sale of their stock. The defendants moved to dismiss on the ground that the consolidated derivative suits (four separate suits had been filed) were barred by a judgment in an earlier shareholder's derivative suit. Since the earlier actions were also brought on behalf of the company and its shareholders, the plaintiffs in all the actions were the same. However, two new defendants had been added in the later suit. Regarding the lack of complete identity of parties, Judge Metzner stated:

> The present case is a proper one for dispensing with the mutuality requirement. The plaintiffs in Horenstein/Ruskay [the earlier actions] chose the forum in which they litigated, had complete discovery on all issues, and voluntarily surrendered [the plaintiff's] claims in exchange for the $650,000 settlement payment. Furthermore, they were fully aware of the role played by the present defendants who were not parties to the earlier proceeding. The participation of these defendants in the challenged transactions was not independent of that of

the other defendants, and in fact in the present complaint they are named merely as "co-conspirators" with the Horenstein/Ruskay defendants.

*Id.* at 271. The same rationale applies here. Plaintiff chose the forum of the prior litigation as well as the parties from whom he would seek relief. At the time plaintiff agreed to settle the action pending before Judge Werker, he was aware of Andersen's role in the activities which formed the basis of his suit. His first complaint alleged specific acts on the part of Andersen which facilitated the conspiracy,[8] but, for whatever reason, he chose not to name Andersen as a party to that suit. In addition, Andersen's participation in the activities that the plaintiff now complains of is not independent of the actions of the earlier defendants.[9] The primary difference between the present suit and the prior one is that the plaintiff is unable to name any of the other co-conspirators in this action because he has already executed releases of his claims against them.

As an additional ground for barring the plaintiffs' actions, the court in *Ruskay* held that the intention of the parties in the prior suit in signing the release was to discharge all parties who had been involved in the acquisition transaction. On appeal, the Second Circuit affirmed on this ground and, accordingly, did not reach the issue of the res judicata effect of the prior suits. 552 F.2d 392 at 398.[10]

In *Morgan Consultants v. American Telephone and Telegraph Co.*, 546 F.Supp. 844 (S.D.N.Y.1982), the plaintiff sued to recover for alleged overcharges for tele-

---

**8.** Plaintiff alleged that Andersen, as the auditor of plaintiff's business records, refused to make public the results of the audit, thereby preventing plaintiff from protesting any of the defendants' activities because he feared blackmail or retaliation.

**9.** Paragraph 9 of the plaintiff's amended complaint alleges that "during the last half of 1980 and the first half of 1981 Andersen met with certain officers and directors of CTS, including Robert Vomastek; Robert Chambers; Kevin Murphy, Esq.; Joseph Carlino, Esq.; and Julian Jawitz, Esq. and WITH "LEGAL MALICE" conspired with them to acquire unlawful control of the CTS enterprise...." Paragraph 10 alleges

that "said unlawful threats and actions conducted by defendant Andersen acting in conspiracy with Chambers, Murphy, Vomastek, Carlino and Jawitz constitute a pattern of "at least two" related racketeering activities as defined in 18 U.S.C. § 1961(5)....

**10.** Andersen was not named in any of the releases plaintiff executed nor is it now sued as a shareholder or officer of CTS. Moreover, Andersen has not raised the releases as a defense to this action. Accordingly, I do not address the issue of the scope of the releases executed by plaintiff.

phone service. The court held that two prior suits based on the same allegations, and which were dismissed for failure to state a claim on which relief could be granted, barred the later suit by the plaintiff. Several defendants named in the new action had not been named as parties to the earlier actions. With respect to those defendants, the court explained in a footnote:

[T]he doctrine of collateral estoppel prevents [the plaintiff] from prosecuting the causes of actions that were dismissed in Actions #1 and #2 (citations omitted). Alternatively, however, each of the new defendants is sufficiently closely related to one or more of the defendants in Actions #1 and #2 ... that they all can invoke res judicata as a defense to the claims in the instant action. *Gambocz v. Yelencsics,* 468 F.2d 837, 841 (3rd Cir. 1972); *Raitport v. Commercial Banks Located Within this District as a Class,* 391 F.Supp. 584 (S.D.N.Y.1975).

*Id.* at 847–848, n. 5.

In *Gambocz v. Yelencsics,* 468 F.2d 837 (3rd Cir.1972), cited by the *Morgan* court, a mayoral candidate for the township of Edison, New Jersey, sued several police officers, a municipal court clerk, the candidate's opponent, the opponent's campaign manager, and the township for a conspiracy to violate his civil rights through instituting criminal proceedings against him in order to interfere with his campaign. The court held that the plaintiff's earlier suit, which had been dismissed with prejudice against several of the defendants named in the new suit, was res judicata as to all the defendants in the new suit. As to those defendants who had not been parties to the first action, the court stated:

We previously determined that the essential allegations of the second complaint parallel those of the first. Moreover, what was averred in the original action was a conspiracy participated in by named individuals, and the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time. We conclude that the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action and, therefore, it is barred by application of the *Bruszewski* doctrine.

*Id.* at 842. *See Bruszewski v. United States,* 181 F.2d 419 (3rd Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

*County of Cook v. Midcon Corp.,* 574 F.Supp. 902 (N.D.Ill.1983), *aff'd,* 773 F.2d 892 (7th Cir.1985), involved an action arising out of the reorganization of several corporations and their subsidiaries. The court was required to determine the res judicata effect of a prior judgment in an action arising from the same set of operative facts. It held that the prior action barred relitigation of all issues which were raised or could have been raised in the prior suit. In a footnote the court stated:

The noncorporate defendants technically were not parties to the state reorganization proceedings; however, they are entitled to the benefits of res judicata on the issues of state law raised by the City because they are privies to the corporate parties involved in the litigation. For example, the corporations and their officers and directors are in privity for purposes of res judicata. *See Mandarino v. Pollard,* 718 F.2d 845 at 850 (7th Cir. 1983); *Lee v. City of Peoria,* 685 F.2d 196, 199 n. 4 (7th Cir.1982); *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir. 1976). Moreover, defendant Arthur Andersen & Co., the accountant of the corporate parties, is in privity with them because it is alleged to be their coconspirator. *See Ruskay v. Jensen,* 342 F.Supp. 264, 271 (S.D.N.Y.1972), *aff'd sub nom. Ruskay v. Waddell,* 552 F.2d 392 (2d Cir.), *cert. denied,* 434 U.S. 911 [98 S.Ct. 312, 54 L.Ed.2d 197] (1977).

*Id.* at 912–913, n. 6.

All these cases have several elements in common with each other and with the case now before me. In each instance, the party against whom the defense of res judicata was being raised had been the plaintiff in the prior suit. As such, it had chosen

the forum in which the claim was litigated and the party or parties from whom relief had been sought. Moreover, it had had a prior opportunity to raise all claims relating to the disputed transaction. In addition, there existed a special relationship between the defendants in the first action and the defendants in the subsequent actions that led each court to conclude that application of res judicata was appropriate despite the lack of complete identity of parties.

In the present action, the plaintiff has sued Arthur Andersen for its role as an alleged co-conspirator of the CTS directors, officers, and lawyers named in the prior suit. Plaintiff seeks the same relief from this defendant that he sought from the previous defendants. All of the facts that are the basis of this suit were known to plaintiff at the time of the earlier action, including Andersen's alleged role in the so-called conspiracy. Justice requires that plaintiff have his opportunity to pursue a remedy for the harms he allegedly suffered. However, I do not believe that Mr. Cahill deserves a second opportunity to pursue those very same claims. Accordingly, I conclude that plaintiff's claims should be barred by the doctrine of res judicata. Although plaintiff now argues that he was coerced into accepting the terms of that settlement, I am satisfied that Judge Werker gave the plaintiff more than adequate warning of the consequences of the settlement and an opportunity, under the protection of the court, to refute the terms of the settlement.

In any event, my opinion today, granting summary judgment for defendant, need not rest solely on grounds of res judicata.

*Plaintiff's Federal Claims*

Although the exact nature of plaintiff's claims against defendant is difficult to determine from the pleadings, plaintiff's first claim alleges that the defendant's activities constitute a violation of the Securities Exchange Act of 1934 ("SEA") (Amended Complaint ¶¶ 68, 71). While the plaintiff does not identify those sections of the SEA which defendant allegedly violated, the factual allegations supporting the securities fraud claim concern plaintiff's sale of his shares of CTS on January 2, 1981.[11] Accordingly, I have construed plaintiff's claims as alleging a violation of Section 10(b)[12] of the SEA, 15 U.S.C. § 78j, and Rule 10b–5[13] promulgated thereunder. 17 C.F.R. § 240.106–5.

11. Paragraph 68 of the Amended Complaint alleges that defendant's acts "constitute securities fraud in that the plaintiff, through such actions, was improperly and illegally deprived of his CTS stock for the unconscionably low price of $75,000.00 when the fair market value of such stock was, upon information and belief, approximately $6,300,000.00 according to reports and documents filed with the Securities and Exchange Commission and approved and verified by the defendant, Arthur Andersen & Company in preparation for a public offering of CTS (CTEK) stock."

Paragraph 69 alleges: "That as a result of such securities fraud, in violation of the Securities and Exchange Act of 1934, and of 18 U.S.C. § 1961(1)(D), plaintiff sustained monetary damages equivalent to the fair market value of the stock less the $75,000.00 received, in all the sum of $6,225,000.00.

12. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*   \*   \*   \*   \*   \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

13. Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange,

(a) to employ any device, scheme or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

■ Section 10(b) and Rule 10b–5 prohibit fraudulent, manipulative and deceptive schemes in connection with the sale or purchase of a security. To maintain a claim for a violation of Section 10(b), plaintiff must allege (1) a misrepresentation or omission of material facts by the defendant; (2) in connection with the purchase or sale of a security; (3) detrimental reliance by the plaintiff on defendant's misrepresentations or omissions; (4) scienter on the part of the defendant in making the misrepresentations or omissions; and (5) use by the defendant of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange. 15 U.S.C. § 78j(b) (1976); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976); *Jaksich v. Thomson McKinnon Securities, Inc.*, 582 F.Supp. 485, 493 (S.D.N.Y.1984). In addition, F.R. C.P. 9(b) requires that the circumstances constituting the fraud must be alleged with particularity. A review of the facts set forth by plaintiff in his pleadings in support of his claim for securities fraud shows that plaintiff's first claim must fail.

■ The sale of securities of which plaintiff complains, occurred on January 2, 1981. Neither party disputes this fact. While plaintiff makes several references to conduct and activities on the part of the defendant[14] which presumably predated this sale, plaintiff's only allegation of a misrepresentation or omission involves the defendant's role in the publication of a "Preliminary Prospectus" for CTS which plaintiff alleges was based on a fraudulent Registration Statement filed with the Securities and Exchange Commission[15]. The filing of the Registration Statement and the publication of the Preliminary Prospectus in which the allegedly false statements were contained, occurred in April 1983, more than

two years after plaintiff's sale of his shares in CTS. Thus, under no construction of plaintiff's allegations can the facts be read to meet the "in connection with" or "reliance" requirements of Section 10(b):

> While the "in connection with" requirement of section 10(b) is to be construed flexibly rather than technically or restrictively, (citations omitted) some discernible nexus between the allegedly fraudulent conduct and the purchase of securities is required.

*Zuckerman v. Harnischfeger Corp.*, 591 F.Supp. 112, 121 (S.D.N.Y.1984). Plaintiff has made no allegations of misrepresentations or omissions by the defendant occurring prior to the sale by plaintiff of his shares of CTS.

■ In his memorandum in opposition to defendant's motion, plaintiff claims that he also alleges a violation of 15 U.S.C. § 78n(e). However, Section 78n(e) is intended to protect shareholders from fraudulent or manipulative acts or practices in connection with a tender offer. Again, since plaintiff had already sold his shares at the time of the publication of the preliminary prospectus, he cannot have been injured by defendant's allegedly fraudulent acts occurring more than two years after the sale. *Cf. Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 596 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); (disapproved on other grounds in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). Accordingly, plaintiff's first claim for securities fraud must fail, and defendant is entitled to summary judgment on that claim.

Most of the factual allegations set forth in the complaint pertain to plaintiff's claims under RICO. To sustain a claim for damages under RICO, there are two essential elements. *Moss v. Morgan Stanley, Inc.*,

**14.** Plaintiff alleges that Andersen was a part of the conspiracy to oust him from his position at CTS, and that Andersen engaged in a variety of activities in late 1980 to chase plaintiff from CTS. However, none of these actions involves the misrepresentation or omission of information that plaintiff could have relied on when he decided to sell his shares in January 1981.

**15.** If the act that plaintiff complains of is the filing of the allegedly misleading registration statement, this occurred more than two years subsequent to the plaintiff's sale of his shares in CTS. Accordingly, he would have no standing to maintain an action against Andersen on this issue.

719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). First, plaintiff must demonstrate that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976). Secondly, plaintiff must show that he was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1976). Because I find that plaintiff cannot establish the substantive aspect of his claim, I do not reach the issue of injury.

■ For a substantive violation of RICO, plaintiff must allege that the defendant, through the commission of two or more acts constituting a "pattern" of "racketeering activity," directly or indirectly invests in, or maintains an interest in, or partici-pates in an "enterprise," the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)-(c) (1976). *Moss v. Morgan Stanley, Inc., supra*, at 17. Plaintiff points to a number of acts on the part of the defendant which allegedly constitute "racketeering activity" [16], including blackmail, extortion, bribery and securities fraud.[17] Defendant argues that plaintiff's RICO claims must be dismissed because all of the predicate acts upon which plaintiff relies for his RICO claims are barred by the applicable statutes of limitations, with the exception of the securities fraud claim, which is subject to a six-year statute of limitations.[18] Because plaintiff's first cause of action fails to state a claim for relief for securities fraud, the plaintiff cannot rely on this claim to establish the

**16.** Section 1961(1) defines racketeering activity as:

(A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code ... (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act;

**17.** Plaintiff claims defendant participated in: "threats of murder; attempted murder; kidnaping; robbery; bribery; extortion; and (B) including 18 U.S.C. § 659 theft from interstate shipment; §§ 891–894 extortionate credit transactions; § 1503 obstruction of justice; § 1951 interference with commerce; § 1952 racketeering; § 2315 interstate transportation of stolen property; and (D) including fraud in the purchase and sale of securities." (¶ 9 Complaint.) Plaintiff also claims that the defendant transmitted fraudulent accounting reports over public wire, in violation of 18 U.S.C. § 1343 (¶ 54(e)); that defendant unlawfully kept control of plaintiff's records as a continuing threat of blackmail, and that defendant participated in illegal shareholders meetings. These claims are described in further detail in the complaint.

**18.** The statute of limitations for Rule 10b–5 actions is the limitations period which the state has provided for an action based upon common law fraud. *IIT, an International Investment Trust v. Cornfeld*, 619 F.2d 909 (2d Cir.1980). It is not clear in this case which of New York's statutes of limitations regarding fraud would apply. In *IIT*, the Second Circuit found that C.P.L.R. § 203(f) was applicable rather than C.P.L.R. § 213(8), because "[w]hile federal law looks to state law for the relevant period of limitation when none has been provided in the federal statute, federal law controls on the question when that period begins to run." *Id.* at 929 (citations omitted). The court found that the federal rule with respect to discovery of fraud was that the time begins to run when the plaintiff has actual knowledge of the alleged fraud or has knowledge of sufficient facts which in the exercise of reasonable diligence should have led to actual knowledge. N.Y.C.P.L.R. § 203(f) provides that "where the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer." Section 213(8) provides that an action based on fraud must be commenced within 6 years and that the time "shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."

predicate acts necessary to sustain his third cause of action under RICO.[19]

■ RICO contains no specific statute of limitations. When Congress has failed to establish a statute of limitations for a federal cause of action, the approved practice is to apply the most analogous statute of limitations of the forum state, unless the limitation period is inconsistent with federal law or policy. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Therefore, I look to New York law for the most relevant statute of limitations. *Durante Bros. and Sons, Inc. v. Flushing National Bank*, 755 F.2d 239, 248 (2d Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). In *Durante*, the Second Circuit stated:

> There being no state law analog to the present civil RICO claim, we conclude that the most appropriate state statute of limitations is that found in CPLR § 214(2) governing actions to enforce a liability created by statute.

*Id.* at 249. There has been a difference of opinion within this district as to whether the Second Circuit intended the three-year limitation period of CPLR § 214(2) to be applied to all civil RICO claims, regardless of their factual underpinnings. In *Fustok v. Conticommodity Services, Inc.*, 618 F.Supp. 1076 (S.D.N.Y.1985), Judge Lasker determined that the Second Circuit had not intended to create a uniform three-year statute of limitations for all civil RICO claims. In *Bankers Trust Company v. Feldesman, et al.*, 648 F.Supp. 17, (S.D.N.Y.1986), Judge Conner concluded that CPLR § 214(2) was the most appropriate statute of limitations for all civil RICO claims arising in New York.

■ In this case, under either interpretation of *Durante*, plaintiff's viable RICO claims are barred. To the extent that plaintiff's claims are based on the conspirators' alleged acts of violence, threatened violence and intentional destruction of the plaintiff's property, I agree with the defendant that they are most analogous to the New York state law claims of intentional tort which fall within CPLR § 215(3), and are subject to a one-year statute of limitations. To the extent that plaintiff's claims can be read to seek recovery for damages for injury to property, the analogous state law claims fall within the three-year limitations period of CPLR § 214(4). The remainder (and the majority) of plaintiff's claims do not appear to be analogous to any state law claim. Accordingly, for those claims *Durante* directs that I apply CPLR § 214(2) which requires that "an action to recover upon a liability, penalty or forfeiture created or imposed by statute ..." must be commenced within three years.

■ Plaintiff attempts to avoid the statute of limitations defense by arguing that defendant's unlawful acts have continued up to today. However, all of the specific events that plaintiff pleads and that could possibly be considered as predicate acts for purposes of RICO occurred at or about the time of plaintiff's sale of his CTS stock in 1981. The only allegation in the amended complaint regarding more recent activities of defendant is "[t]hat upon information and belief defendant Andersen remains in indirect control of the CTS enterprise to this very day in violation of 18 U.S.C. § 1962(b) and in furtherance of defendant's unlawful RICO conspiracy ...". Par. 58, Amended Complaint. This single conclusory allegation is insufficient to prevent plaintiff's RICO claim from being time-barred. The entire thrust of plaintiff's complaint is that defendant participated in a conspiracy to get "rid" of plaintiff at CTS and to take over his stock. As of January 2, 1981, the object of the conspiracy was a *fait accompli*. Even the affidavits submitted in support of the complaint limit their discussion to activities occurring in 1980–1981.

The affidavit of Thomas M. Palka, the former president of CTS, submitted in sup-

---

**19.** In addition, the only act alleged to have been a violation of the securities law was defendant's alleged misrepresentations in its statement filed with the SEC in connection with the 1983 Preliminary Prospectus. Accordingly, if defend-

ant's claim that all other predicate acts are barred by statutes of limitations is correct, even if plaintiff's fraud claim were not inadequate, the complaint would fail to meet the requirement of two predicate acts.

port of the complaint, makes no mention of Arthur Andersen, and contains no references to illegal or improper acts on anyone's part occurring later than the end of November 1980.

Robert D. Vomastek's affirmation, also submitted in support of plaintiff's claims, alleges that Vomastek was a member of a conspiracy, of which Andersen was also a member, to remove Cahill from CTS and take his stock. Vomastek's affirmation describes activities occurring in a period from 1980 to March 1981.

Since all of the activities upon which plaintiff relies as predicate acts in support of his RICO claims occurred in 1980 and 1981 and, in any case, prior to 1983, plaintiff's RICO claims are time-barred. Accordingly, defendant is entitled to summary judgment on plaintiff's third claim for relief.

*Plaintiff's Remaining Federal Claims*

In addition to his claims under RICO and for securities fraud, plaintiff makes numerous other allegations of federal statutory and constitutional violations which might confer jurisdiction on this court pursuant to 28 U.S.C. § 1331. Although not contained in any of his formal claims for relief, plaintiff alleges violations of the Clayton Act and the "Taft-Hartley Act of 1947," as separate grounds for federal question jurisdiction.

█ Plaintiff claims that Andersen is structured and operated in a manner which enables it "to eliminate competition, restrain trade and optimize 'tying' in violation of the Clayton Act," (Amended Complaint ¶ 7) and that, as a result of defendant's unlawful structure, plaintiff has suffered damages. Under Section 4 of the Clayton Act, a person who has been injured in his business or property as a result of a violation of the antitrust laws may sue for damages. 15 U.S.C. § 15. Among the factors a court must consider in determining whether a particular plaintiff has standing to bring an antitrust action, are whether there is a causal connection between plaintiff's injury and the alleged violation, whether plaintiff's injury is of the type that the antitrust laws were meant to prevent, the directness or indirectness of the injury and the speculative nature of plaintiff's damages. *See, e.g., Rosenberg v. Cleary, Gottlieb, Steen & Hamilton,* 598 F.Supp. 642 (S.D.N.Y.1984). It is dubious that under the factual allegations pleaded, plaintiff could meet the standing requirements for maintaining an action under the antitrust laws. The property damage that plaintiff alleges arises from what he claims was an unduly low purchase price for the shares of his stock and from being forced out of a position of control at CTS by a conspiracy of the other majority shareholders. Even if plaintiff could prove that Andersen was violating the antitrust laws, it would be extremely difficult for plaintiff to show that his injuries were a result of that violation.

█ I need not conduct this inquiry, however, because of the four-year limitation period established by Section 4B of the Act.[20] The limitation period begins to run on the date on which the defendant commits an act that causes injury to the plaintiff. Regardless of its cause, the only injury that plaintiff alleges occurred on January 2, 1981, the date on which he sold his shares of CTS and relinquished all control of or participation in the business of CTS. Plaintiff did not commence this action until December 1985. Accordingly, plaintiff's antitrust claims are time-barred.

As to plaintiff's claim for violation of the "Taft-Hartley Act," plaintiff has failed to state a claim upon which relief could be granted. Resolving all doubts in plaintiff's favor, I cannot conceive of any set of facts that would entitle plaintiff to relief under the Labor-Management Relations Act, 29 U.S.C. § 141 *et seq.*[21]

---

**20.** Section 15b provides, in pertinent part:

Any action to enforce any cause of action under sections 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued.

**21.** The congressional declaration of the purpose and policy of the Act is set forth in Section 141(b) and provides in pertinent part:

It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of

*Diversity Jurisdiction*

■ Since I have found that all of plaintiff's federal claims must be dismissed, I must consider whether, as plaintiff alleges, diversity of citizenship supports federal jurisdiction over the state claims. For purposes of diversity jurisdiction, a partnership is treated as a citizen of every state of which a general partner is a citizen. *Lewis v. Odell*, 503 F.2d 445 (2d Cir.1974), citing *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900); *Woodward v. D.H. Overmyer Co.*, 428 F.2d 880, 883 (2d Cir. 1970), *cert. denied*, 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971).

■ Defendant submitted with its motion papers an uncontested affidavit asserting that at least 25 general partners of Andersen are residents of New York. Plaintiff is also a resident of New York. Therefore, diversity jurisdiction is lacking in this case.

■ Since none of the federal causes of action states a claim, and there is no other basis for federal jurisdiction, I am not required to entertain plaintiff's state law claims under the doctrine of pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). While the exercise of pendent jurisdiction is discretionary, where, as here, the federal claims are dismissed prior to trial, it is appropriate to decline to exercise jurisdiction over the state law claims. *Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139. *See also, CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 14 (2d Cir.1975).

*Andersen's Request for Rule 11 Sanctions*

■ Because I find that plaintiff did not bring this action in bad faith, defendant's request for Rule 11 sanctions is denied.

For the reasons discussed above, summary judgment in favor of the defendant is

granted on plaintiff's first and third claims. Plaintiff's claims arising under state law are dismissed for lack of subject matter jurisdiction.

*Plaintiff's Rule 60(b) Motion*

On October 24, 1986, while the present motion was pending, plaintiff filed a motion to vacate the Order of Dismissal entered by Judge Werker in *Cahill v. Robert Chambers et al. ("Cahill v. Chambers")*, 82 Civ. 6327, to reopen that case, and for an order appointing a receiver for CTEK Software (formerly CTS). Plaintiff's motion is based upon a letter, dated October 14, 1986, which he received from Chambers as President of CTEK, notifying him that because of the pending litigation, "you are hereby advised that monthly consulting payments to you are being suspended pending the complete resolution of such matters." Monthly consulting payments is one of the terms of the stipulation of settlement incorporated into the Order of Dismissal in *Cahill v. Chambers*.

■ Plaintiff requests that the Order of April 14, 1983 be vacated because of the defendant's alleged violation of the terms thereof. Under Rule 60(b)(6), a district court may vacate its own final judgment "for any other reason obviously justifying relief from the operation of the judgment." One possible ground for relief under Rule 60(b)(6) is that settlement terms of the earlier judgment have been violated. *See, e.g., Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir.) *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). However, as plaintiff recognizes, the decision to vacate an earlier judgment and determine a dispute regarding a settlement entered into as part of that judgment is discretionary with the court. *Harman v. Pauley*, 678 F.2d 479 (4th Cir.1982). For the reasons that follow, I believe that a separate action to enforce the terms of the settlement is a more appropriate means of obtaining the relief that plaintiff seeks.

both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect

commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce.

I have already determined, *see* p. 1119 *infra*, that Judge Werker's order of dismissal based upon the stipulation of settlement was entered into by the parties voluntarily and with full knowledge and understanding of its effect. The terms of the settlement have been in operation since the time of Judge Werker's order, with no complaints by either party.

Moreover, plaintiff's stated reason for seeking to vacate the judgment at this time is defendant's recent breach of its terms. Judicial economy would not be served by hearing this motion as part of the present proceeding since distinct issues of fact and law are involved. In addition, relief from a judgment is usually granted by the judge who entered the judgment in the first place. While, unfortunately, plaintiff cannot make his application to the judge who approved the settlement, I lack the familiarity with the original lawsuit and the circumstances leading up to the settlement that would be the most compelling reason for handling plaintiff's application as an extension of the earlier proceeding.

The Second Circuit, noting the potentially broad scope of Rule 60(b)(6), has stated that relief should only be granted where the moving party has demonstrated "extraordinary circumstances" justifying relief or when the judgment may work "extreme and undue hardship." *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir.1986); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.); *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). Rule 60(b) provides an exception, when justice requires, to the general rule that there must be an end to litigation. Plaintiff has not shown that this exception applies here. Plaintiff has offered no reason why this newly arisen dispute cannot be handled in a separate action. Therefore, I deny plaintiff's motion to reopen the case of *Cahill v. Robert Chambers, et al.*

SO ORDERED.