**Robert Michael HALLAL, Mary Elizabeth Norwood Hallal, Plaintiffs,**

v.

**Jessie HOPKINS, Sheriff of Madison County, Mississippi; Keith Tillman, Administrator of Madison County Detention Center; Larry Williams, Ex–Deputy of Madison County Sheriff's Office; Lois Penn, Deputy–Matron, Madison County Detention Center; Lloyd Jones, Sheriff of Simpson County, Mississippi; Ike Durr, United States Marshal, Defendants.**

**Civil Action No. 3:92–CV–73WS.**

United States District Court, S.D. Mississippi, Jackson Division.

March 31, 1995.

Robert Michael Hallal, Watsontown, PA, pro se.

Mary Elizabeth Hallal, Utica, MS, pro se.

Rebecca B. Cowan, Montgomery, Smith–Vaniz & McGraw, Jackson, MS, for Jessie Hopkins and Keith Tillman.

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND HEARING

WINGATE, District Judge.

Before the court is the motion of the defendants Sheriff Jessie Hopkins of Madison County, Mississippi; Keith Tillman, Administrator of Madison County Detention Center, Madison County, Mississippi; and Lois Penn, Deputy Matron of the Madison County Detention Center, for summary judgment under Rule 56(b),[1] Federal Rules of Civil Procedure in the above-styled and numbered cause. The plaintiffs' complaint is filed pursuant to Title 42 U.S.C. § 1983.[2] This court has jurisdiction over this matter pursuant to Title 28 U.S.C. §§ 1343(a)[3] and 28 U.S.C. § 1331[4] (federal question).

### I. BACKGROUND

This case was filed pro se by the prisoner plaintiffs Robert Michael Hallal (hereinafter Robert Hallal) and Mary Elizabeth Norwood Hallal (hereinafter Mary Hallal) who are husband and wife. The complaint asserts several claims against the various defendants. Plaintiff Robert Hallal claims that he was subjected to cruel and unusual punishment and denied due process while incarcerated at the Madison County Detention Center (hereinafter "MCDC") after attempting to escape that facility. According to Robert Hallal, he was placed in lock down after his attempted escape and denied outdoor recreation. He says that this resulted in total sensory deprivation which caused him serious psychological harm.

Both Robert Hallal and Mary Hallal claim that they were denied a "liberty interest" when Larry Williams, a former deputy sheriff at the MCDC illegally confiscated correspondence between them; that defendants Sheriff Jessie Hopkins and Keith Tillman denied them adequate visitation privileges; that Sheriff Jessie Hopkins and Keith Tillman denied them joint access to counsel; and that the defendants Sheriff Jessie Hopkins, Keith Tillman, and Lois Penn interfered with the plaintiffs' mail, would not permit the plaintiffs to keep photographs, and denied the plaintiffs their privacy. Both Robert Hallal and Mary Hallal additionally claim that the defendants Sheriff Jessie Hopkins and Keith Tillman have established a policy of discrimination toward federal detainees at the MCDC. Finally, both Robert Hallal and Mary Hallal claim that the defendants Sheriff Jessie Hopkins and Keith Tillman "skim profits" from the MCDC commissary.

The plaintiff Mary Hallal individually asserts that her constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution were

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides:

 (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Title 42 U.S.C. § 1983 provides in pertinent part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Title 28 U.S.C. § 1343(a)(3) provides:

 (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

4. Title 28 U.S.C. § 1331 provides:

 The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

violated when she was denied legal documents, mail, and pictures of her child and other loved ones while she was incarcerated in the MCDC. Mary Hallal claims that United States Marshal Ike Durr took punitive measures against her when he had her moved from the MCDC to the Simpson County Jail; that the Simpson County Jail was overcrowded with no beds, no ventilation, and open toilets in close quarters; that Sheriff Lloyd Jones of Simpson County, Mississippi, is the party responsible for the severe conditions at Simpson County Jail; and that Mary Hallal was denied access to her attorney by Sheriff Lloyd Jones. Finally, Mary Hallal claims that she was subjected to cruel and inhuman punishment in the form of retaliation firstly, when United States Marshal Ike Durr transferred her from Simpson County Jail to Forrest County Jail and secondly, when United States Marshal Ike Durr transferred her to the federal prison facility in Lexington, Kentucky, from MCDC. According to Mary Hallal, this second transfer interfered with her wedding plans.

Plaintiffs were granted permission to proceed in forma pauperis on November 5, 1993, and summonses were issued for the defendants. Summons for the defendant Larry Williams was returned unexecuted, so service of process on Larry Williams was never obtained. On September 13, 1994, this court entered an order pursuant to Rule 4(m), formerly Rule 4(j), of the Federal Rules of Civil Procedure which requires dismissal of a complaint without prejudice if service is not accomplished within 120 days after the filing of a complaint.[5] *See Traina v. United States,* 911 F.2d 1155 (5th Cir.1990); *Norlock v. City of Garland,* 768 F.2d 654, 657 (5th Cir.1985). The court's order eliminated from

the instant lawsuit the plaintiffs' claim that Williams illegally confiscated their mail.

On November 23, 1993, the plaintiffs filed a motion to dismiss their complaint against the defendant Sheriff Lloyd S. Jones with prejudice. This motion was granted on December 13, 1993, thereby eliminating from this lawsuit the claims of Mary Hallal pertaining to conditions in the Simpson County Jail.

A motion to dismiss or alternatively for summary judgment was submitted on behalf of United States Marshal Ike Durr on May 19, 1994. The plaintiffs moved on June 27, 1994, for time to respond to this motion. This court entered an order granting plaintiffs until July 18, 1994, to respond; however, no response was made. On July 28, 1994, this court directed plaintiffs to show cause not later than August 18, 1994, why summary judgment should not be granted. Plaintiffs did not respond. This court, acting pursuant to its inherent power to govern its docket and expeditiously dispose of pending cases, granted summary judgment in favor of United States Marshal Ike Durr on September 13, 1994. *See Link v. Wabash Railroad Company,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *McNeal v. Papasan,* 842 F.2d 787, 789–90 (5th Cir.1988).

Therefore, all of the plaintiffs' claims against former deputy Larry Williams, Sheriff Lloyd S. Jones, and United States Marshal Ike Durr have been dismissed from this lawsuit, only leaving before this court the plaintiffs' claims against Sheriff Jessie Hopkins, Keith Tillman, and Lois Penn.

On January 10, 1994, the defendants Sheriff Jessie Hopkins, Keith Tillman, and Lois Penn moved for summary judgment. The certificate of service attached to that motion shows that the summary judgment docu-

---

5. Rule 4(m), effective December 1, 1993, provides in pertinent part:

 **(m) Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

 Rule 4(j), effective when this complaint was filed, similarly provided:

 **(j) Summons: Time Limit for Service.** If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

ments were mailed to the plaintiff Robert Hallal at P.O. Box 888, Sandstone, Minnesota 55072. The certificate also shows that the address of the plaintiff Mary Hallal was unknown to these defendants. Robert Hallal did not respond to the motion for summary judgment.

On March 18, 1994, Robert Hallal submitted a motion seeking this court's disqualification in the instant case and in Civil Action No. 3:94–cv–94WS. This was immediately followed by the motion of the defendants Sheriff Jessie Hopkins, Keith Tillman, and Lois Penn to dismiss the plaintiffs' claims for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure on March 24, 1994. Additionally, on March 28, 1994, the defendants Sheriff Jessie Hopkins, Keith Tillman, and Lois Penn objected to Robert Hallal's motion seeking this court's disqualification. A response to the defendants' motion to dismiss for failure to prosecute was submitted on behalf of Robert Hallal and Mary Hallal on April 11, 1994.

Finding that Mary Hallal had not been served with the motion of the defendants Sheriff Jessie Hopkins, Keith Tillman, and Lois Penn for summary judgment, on September 14, 1994, this court directed these defendants to serve their motion once again to both plaintiffs. In the interim, this court had examined the court file and found that the last known address of Mary Hallal was and continues to be 412 Southview, Utica, Mississippi 39175. Plaintiffs were directed to respond in accordance with Uniform Local Rule 8(d) which provides in pertinent part that "[c]ounsel for respondent shall submit the original and one copy of a memorandum of authorities in reply, and shall do so within ten (10) days after service of the movant's memorandum." The plaintiffs submitted their response on October 24, 1994.

## II. THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS SHERIFF JESSIE HOPKINS, KEITH TILLMAN AND LOIS PENN

The Supreme Court expressed the standard for summary judgment in the case of

*Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon a motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Id.,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

Rule 56(c),[6] Federal Rules of Civil Procedure, requires the district court to enter summary judgment if evidence favoring the non-moving party is not sufficient for the jury to enter a verdict in his favor. *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122–1123 (5th Cir.1988), citing *Celotex Corporation v. Catrett,* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When the moving party has carried the Rule 56(c) burden, the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, the district court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant. *Byrd v. Roadway Express, Inc.,* 687 F.2d 85, 87 (5th Cir.1982); *James v. Sadler,* 909 F.2d 834, 836 (5th Cir.1990).

## III. RES JUDICATA

### A. Defendants' Argument

Sheriff Jessie Hopkins, Keith Tillman and Lois Penn (hereinafter "defendants") contend

---

6. Rule 56(c) provides in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affida-vits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

that Robert Hallal's claims in the case *sub judice* were rejected by this court in Civil Action Nos. 3:92–cv–0150WN and 3:93–cv–210WN (hereinafter "*Hallal I*"), two cases which were consolidated for trial. In *Hallal I*, the plaintiff Robert Hallal asserted the following claims: (1) Keith Tillman would not respond to Robert Hallal's grievances, thereby denying Hallal due process; (2) jailer Lois Penn would not permit Robert Hallal to use the telephone on February 16, 1992, in order to call his family; (3) legal documents came up missing pertaining to Civil Action No. 3:92–cv–73WS; (4) Robert Hallal was subjected to a strip search after returning to MCDC from a medical appointment; (5) physical assault on Robert Hallal by Richard Spencer on February 17, 1992; (6) Keith Tillman would not permit Robert Hallal to shower; (7) Keith Tillman would not permit Robert Hallal to exercise in the facility provided for that purpose; (8) Keith Tillman would not permit Robert Hallal to contact a Louisiana attorney by telephone or to answer the attorney's telephone calls to Robert Hallal at the MCDC; (9) Keith Tillman would not permit Robert Hallal to use the law library; (10) retaliation for filing Civil Action No. 3:92–cv–73WS and for attempting an escape; and (11) cruel and inhuman treatment by subjecting Hallal to twenty-three hour lockdown; by subjecting Hallal to total sensory deprivation; and by denying Hallal exercise and showers. These issues came forward for a four-day trial beginning on May 3, 1993. Final judgment was entered in favor of the defendants on May 18, 1993, and that judgment was affirmed by the United States Court of Appeals for the Fifth Circuit on October 4, 1994. According to the defendants, under the doctrine of res judicata, those claims litigated in *Hallal I* against Tillman cannot be relitigated by Hallal in the instant complaint. *See Nilsen v. City of Moss Point, Mississippi,* 701 F.2d 556, 559 (5th Cir.1983). Res judicata, say defendants, also bars any new claims Robert Hallal may have made against Tillman in his instant complaint since those claims could have and should have been included in his first complaint. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

Defendants also contend that Sheriff Jessie Hopkins and Lois Penn could have been named as defendants in *Hallal I* since Hopkins, as Sheriff of Madison County, was responsible for Tillman's alleged conduct, and Tillman, as Administrator of the MCDC, was responsible for Penn's alleged conduct. Defendants argue that the doctrine of "nonmutual claim preclusion" prevents Robert Hallal from including Hopkins and Penn as defendants under any claims he litigated or could have litigated during *Hallal I*. That doctrine which, according to the defendants, expands the application of res judicata, prevents a plaintiff from relitigating claims in successive lawsuits against non-parties when: (1) the claims are the same as those in a prior lawsuit; (2) the plaintiff had a full and fair opportunity to litigate those claims in that prior lawsuit; and (3) a judgment has been entered against the plaintiff on those claims. *See Blonder–Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. 313, 323–24, 91 S.Ct. 1434, 1439–40, 28 L.Ed.2d 788 (1971); *Gambocz v. Yelencsics,* 468 F.2d 837, 841 (3rd Cir.1972); *Randles v. Gregart,* 965 F.2d 90, 93 (6th Cir.1992); *Betances v. Quiros,* 603 F.Supp. 201, 205–08 (D.P.R.1985); and *Tole S.A. v. Miller,* 530 F.Supp. 999, 1003 (S.D.N.Y.1981). In other words, say defendants, "non-mutual claim preclusion" bars a plaintiff's claim against a party in a subsequent lawsuit who was not a party in the plaintiff's original unsuccessful lawsuit when the plaintiff had a fair and full chance to litigate the same claim against that party in the original action.

So, say defendants, all claims asserted by Robert Hallal are barred by either the doctrine of res judicata or by non-mutual claim preclusion and summary judgment on his claims should be granted.

### B. *Plaintiffs' Response*

Robert Hallal contends that his claims in the instant case are not identical to those raised in *Hallal I*. Robert Hallal directs this court's attention to fifteen claims in the plaintiffs' complaint which he contends are new claims to be considered by this court, namely, claims 1, 2, 3, 4, 10, 11, 12, 13, 14, 15, 17, 18, 19 and 20. His Claim 1 contends that he was subjected to cruel and unusual punishment

by Keith Tillman when he was placed in lock down and denied outdoor recreation. Of course, this issue was raised in *Hallal I* where it was established that Robert Hallal had posed a constant problem to Madison County Detention Center personnel. According to the testimony received by this court in *Hallal I*, Robert Hallal had attempted to escape from MCDC; he had subjected jail personnel to a barrage of vicious verbal abuse; he had spit on jail personnel; he also had promised to attempt another escape; and he had voiced a threat against the defendant Keith Tillman. As a consequence, Robert Hallal was placed in lockdown and was denied privileges because of his own contumacious actions. Additionally, in *Hallal I*, Robert Hallal claimed that Keith Tillman's act of placing him in lock down as a punitive measure after Robert Hallal's attempted escape constituted denial of due process (Claim 2 in the instant case).

Claim 3 is Mary Hallal's assertion that she was denied her rights under the First, Fourth, Fifth and Fourteenth Amendments when certain legal papers, mail and pictures of loved ones were taken from her when she entered MCDC. Robert Hallal offers no reason to explain why he believes this claim applies to him.

Both Robert Hallal and Mary Hallal claim to have been denied "liberty interest" (Claim 4) when the aforesaid letters containing a contraband substance were confiscated. Claim 10 is one of Mary Hallal's assertions against United States Marshal Ike Durr and Sheriff Lloyd Jones, parties who have been dismissed from this lawsuit.

Claim 11 simply reasserts Robert Hallal's contention in *Hallal I* that he was subjected to cruel and unusual punishment when he was placed in lock-down and denied outdoor recreation. However, Claim 11 names Sheriff Jessie Hopkins as well as Keith Tillman as a party allegedly responsible for inflicting cruel and unusual punishment on Robert Hallal.

In Claim 12, both plaintiffs assert denial of adequate visitation privileges against Sheriff Jessie Hopkins and Keith Tillman. Additionally, both plaintiffs assert that they were denied joint access to counsel by Sheriff Jes-

sie Hopkins and Keith Tillman and that this resulted in denial of meaningful access to the court (Claim 13). Both plaintiffs say that the defendants Sheriff Jessie Hopkins and Keith Tillman improperly accounted for profits from the MCDC commissary (Claim 14).

Claims 15, 17 and 18 include the assertions of both plaintiffs that the defendants Sheriff Jessie Hopkins, Keith Tillman and Lois Penn interfered with their mail, would not permit the plaintiffs photographs, and denied them privacy.

Finally, Claims 19 and 20 deal with the assertions by both plaintiffs that a "double standard" has been practiced by defendants Sheriff Jessie Hopkins and Keith Tillman which is discriminatory toward federal prisoners and which constitutes denial of equal protection.

All these claims, say plaintiffs, are new claims which this court must consider. Additionally, the plaintiffs contend that the instant case was well known to the defendants and that the defendants could have moved to consolidate the instant case with *Hallal I*. However, as noted by the defendants in their rebuttal brief, plaintiffs were not given permission to proceed in the instant case in forma pauperis until November 3, 1993. Furthermore, say defendants, the plaintiffs were not precluded from moving to consolidate the instant case with *Hallal I* in order to avoid any preclusive effect on the instant case.

### C. Court's Analysis

#### 1. Robert Hallal's Claims Against Keith Tillman and Res Judicata

The doctrine of res judicata, also called claim preclusion, means a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981). Res judicata has four elements: (1) the prior judgment must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) there must be identity of parties;

and (4) that the same cause of action must be involved in both suits (identity of causes of action). *Nagle v. Lee*, 807 F.2d 435, 439 (5th Cir.1987), and the authority therein cited. Furthermore, res judicata bars all claims that were or could have been advanced in support of the plaintiff's cause, not merely those which were adjudicated. *Ocean Drilling & Exploration Company, Inc. v. Mont Boat Rental Services*, 799 F.2d 213, 217 (5th Cir.1986); *Jennings v. Caddo Parish School Board*, 531 F.2d 1331 (5th Cir.1976). The doctrine dictates that there be an end to litigation. It further mandates that those who have contested an issue be bound by the results of the contest. *Baldwin v. Traveling Men's Association*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). Even an erroneous conclusion reached by a court in an original action does not deprive a defendant in a subsequent action of the right to rely on the plea of res judicata. *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325, 47 S.Ct. 600, 604, 71 L.Ed. 1069 (1927). It is direct review by appeal, not the filing of new complaints concerning the same issues, that corrects any erroneous conclusions a court might make. *Equitable Trust Company v. Commodity Futures Trading Commission*, 669 F.2d 269 (5th Cir.1982).

In the instant case, the plaintiffs' complaint asserts in Claim 1, Claim 2 and Claim 11 the very same claims against Keith Tillman (cruel and inhuman treatment and failure to provide due process) which were asserted by Robert Hallal and adjudicated by this court in *Hallal I*. Final judgment was entered on these claims on May 18, 1993, and that judgment was affirmed on October 4, 1994. Therefore, these claims clearly are precluded in the instant lawsuit because the parties are identical; the very same issues were decided by a court of competent jurisdiction; and because the final judgment pertaining to these issues was on the merits of these claims against Keith Tillman.

However, Robert Hallal also asserts claims against Keith Tillman to include inadequate visitation policy at MCDC (Claim 12);

denial of meaningful access to the courts due to being denied joint access to counsel with Mary Hallal (Claim 13); improperly handling profits from the MCDC commissary (Claim 14); interference with mail, denial of photographs and denial of privacy (Claims 15, 17 and 18); and denial of equal protection (Claims 19 and 20). Claim preclusion is appropriate with regard to these claims only if the aforementioned conditions are satisfied— identical parties; identical claim or claims; judgment in the prior action by a court of competent jurisdiction; and a judgment on the merits. *Eubanks v. Federal Deposit Ins. Corp.*, 977 F.2d 166, 169 (5th Cir.1992). These claims against Keith Tillman are not identical to those raised against him in *Hallal I*, and there has been no judgment on the merits of these claims. Therefore, this court finds that these claims are not precluded by res judicata and must be addressed on their merits.

### 2. *Robert Hallal's Claims against Jessie Hopkins and Lois Penn*

The defendants Sheriff Jessie Hopkins and Lois Penn were not parties in *Hallal I*. Nevertheless, both were available as witnesses and gave testimony regarding the matters of which Robert Hallal complained in *Hallal I*. According to the defendants, just as Robert Hallal's claims against Keith Tillman are precluded by the doctrine of res judicata, his claims against Sheriff Jessie Hopkins and Lois Penn should be precluded as well under a broader application of the doctrine of res judicata, non-mutual claim preclusion (or non-mutual estoppel). *See Blonder–Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In *Blonder–Tongue*, the United States Supreme Court partially overruled *Triplett v. Lowell*, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), and held that collateral estoppel could be applied in patent infringement cases, *regardless of mutuality*[7] as long as the plaintiff had a "full and fair opportunity" to litigate the

---

7. The doctrine of mutuality of estoppel "dictates that a judgment will not be held conclusive in favor of one person unless it would be conclusive

against him had the case been decided the other way." Black's Law Dictionary 1021 (6th ed. 1990).

validity of his patent in a prior action and was unsuccessful.

The Fifth Circuit noted in one of its own patent cases that it has expressed its willingness to discard the rule of mutuality of estoppel, thereby precluding a party from relitigating an issue decided against him in a prior action, even if the party asserting the estoppel was a stranger to the prior action. *See Studiengesellschaft Kohle v. Eastman Kodak*, 616 F.2d 1315 (5th Cir.1980). However, the Fifth Circuit also noted in *Kohle* that a prior litigation will not create estoppel in every circumstance. "We have recognized," said the Fifth Circuit, "that in order to give collateral estoppel effect to a prior determination we have required that (1) the issue to be concluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been actually litigated; and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment," citing *Matter of Merrill*, 594 F.2d 1064, 1067 (5th Cir.1979); *Stevenson v. International Paper Co.*, 516 F.2d 103, 110 (5th Cir.1975); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458–59 (5th Cir.), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); and *Rachal v. Hill*, 435 F.2d 59, 62 (5th Cir.1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971). *Kohle*, 616 F.2d at 1331–32. Thus, the Fifth Circuit in *Kohle* concluded that it would not apply collateral estoppel and permitted the plaintiff to assert a patent infringement charge against the defendant, notwithstanding that the same plaintiff's patent had been found uninfringed by another defendant's similar process in a prior patent infringement action.

The Fifth Circuit in *Kohle* addressed the *Blonder–Tongue* decision as follows:

> ... There the Court had before it the issue of the effect to be given a prior determination of patent invalidity. The Court explicitly overruled its earlier decision in *Triplett v. Lowell*, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), which had held that a determination of patent invalidity is not res judicata against the patentee in subsequent litigation against a different

defendant. Noting the arguments in favor of rejecting the doctrine of mutuality of estoppel, the Court's decision in *Blonder–Tongue* allowed a defendant charged with infringement to raise a plea of estoppel where the patent in question had been declared invalid in a different adjudication.

At the same time, however, the Court recognized that the estoppel plea may not be employed automatically or too broadly. Rather, the issue must be identical with that presented in the prior adjudication, and the patentee must have had a full and fair chance to litigate the validity of the patent. 402 U.S. at 323, 332–34, 91 S.Ct. at 1444.

We have examined the issue of estoppel in a variety of patent contexts. Our decisions reflect a strong insistence upon strict compliance with the three requirements outlined above. In *Brose v. Sears, Roebuck & Co.*, 455 F.2d 763 (5th Cir.1972), and *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc.*, 575 F.2d 530 (5th Cir.1978), we held that a consent decree in a suit attacking patent validity does not act as collateral estoppel in the absence of clear evidence concerning the parties' intention. As we noted in *Kaspar Wire*, the prior decree "was based entirely on the consent of the parties, and involved neither a judicial determination nor a stipulation of the parties with respect to the validity of (the patent) or its infringement." 575 F.2d at 539–540. In *In re Yarn Processing Patent Validity Litigation*, 498 F.2d 271 (5th Cir.), *cert. denied*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974), we pointed out that in order to invoke estoppel, the issues must be the same as those previously decided. Because we found that the date of invention and the date of reduction to practice were separate issues, only one of which had been adjudicated earlier, we rejected the estoppel argument.

*Kohle*, 616 F.2d at 1332.

Thus, the Fifth Circuit concluded that the type of collateral estoppel made possible in patent cases by the *Blonder–Tongue* decision may not always attach, depending on the facts of each case. For instance, in *Blum-*

*craft of Pittsburgh v. Kawneer Company,* 482 F.2d 542 (5th Cir.1973), the Fifth Circuit had to decide whether a prior finding of patent invalidity would operate as collateral estoppel against a plaintiff's claim, particularly where there had been a prior finding of validity. The Court concluded that it would be technically possible to apply collateral estoppel where a prior finding of invalidity was preceded by several rather than by just one finding of validity. In such instances, said the Fifth Circuit, there would be a red flag warning to a court to apply the full and fair opportunity to litigate criteria very carefully to determine if the court finding the patent invalid had adequately comprehended and applied the appropriate substantive standards. *Id.* at 548. The Court recognized that its decision was problematic, stating that "[w]e also recognize the inevitable problems that can arise in determining the effect of the determination of invalidity upon a prior judgment of validity if collateral estoppel is applied to all later suits. These problems are not presently before us, but we do note that the federal courts have had little difficulty in formulating appropriate solutions," citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 465 F.2d 1253 (6th Cir.1972); and *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

■ This court has reviewed the defendants' authority closely and finds that the doctrine of non-mutual claim preclusion should not be applied to all of the claims raised on behalf of Robert Hallal in the instant case. In the more traditional sense, the doctrine of collateral estoppel or issue preclusion is applied where the issue sought to be relitigated was actually determined and necessarily decided in a prior proceeding in which the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue. *United States v. Mendoza,* 464 U.S. 154, 158 n. 3, 104 S.Ct. 568, 571 n. 3, 78 L.Ed.2d 379 (1984); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973,

59 L.Ed.2d 210 (1979); *Parklane Hosiery Company v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). "[A] right, question, or fact distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction collaterally estops a party or his privy from relitigating the issue in a subsequent action." *Hardy v. Johns–Manville Sales Corporation,* 681 F.2d 334, 338 (5th Cir.1982). The Fifth Circuit has recognized that where a plaintiff has sued parties in serial litigation over the same transaction; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where, although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief—the courts have denied the plaintiff a second bite at the apple. *See Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169 (5th Cir.1992); *Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279, 1288–89 (5th Cir.1989), citing *Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir.1972); *Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1119–23 (S.D.N.Y.1986), *aff'd,* 822 F.2d 14 (2d Cir.1987); *Ruskay v. Jensen,* 342 F.Supp. 264 (S.D.N.Y.1972) (noting that the plaintiffs "were fully aware of the role played by the present defendants who were not parties to the earlier proceeding" when they settled their claims), *aff'd,* 552 F.2d 392 (2d Cir.1977), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *McLaughlin v. Bradlee,* 599 F.Supp. 839, 848 (D.D.C.1984), *aff'd,* 256 U.S.App.D.C. 119, 803 F.2d 1197 (1986); *County of Cook v. MidCon Corp.,* 574 F.Supp. 902 (N.D.Ill.1983), *aff'd,* 773 F.2d 892 (7th Cir.1985); *Spector v. El Ranco, Inc.,* 263 F.2d 143, 145 (9th Cir.1959).[8]

■ Therefore, in view of the forgoing authority, this court finds that all the issues pertaining to the conditions of Robert Hallal's confinement at MCDC, matters which were addressed extensively in *Hallal I* against Keith Tillman and other defendants, are matters vulnerable to the defendants'

---

8. *See also Randles v. Gregart,* 965 F.2d 90, 93 (6th Cir.1992), citing *United States v. Mendoza,* 464 U.S. at 158–59, 104 S.Ct. at 571; *Parklane Hosiery Company v. Shore,* 439 U.S. at 330–31, 99 S.Ct. at 651; and *Hazzard v. Weinberger,* 382 F.Supp. 225, 226–29 (S.D.N.Y.1974), *aff'd,* 519

F.2d 1397 (2d Cir.1975) (and holding that non-mutual claim preclusion is particularly appropriate where a *pro se* plaintiff brings repeated actions upon the same operative facts with a slight change in legal theory and "cast of characters-defendants").

non-mutual claim preclusion defense. While Sheriff Jessie Hopkins and Lois Penn were not named as defendants in *Hallal I*, certain of the allegations of Robert Hallal against them in the instant case address the same issues raised in *Hallal I*, particularly claims 1, 2 and 11. Robert Hallal knew of the respective roles of Sheriff Jessie Hopkins and Lois Penn with regard to his confinement at MCDC and asked questions of each of them concerning their respective roles in *Hallal I*. Many of the questions asked by Robert Hallal dealt with claims 1, 2 and 11 raised in the instant case. Thus, this court finds that the doctrine of collateral estoppel or issue preclusion should be applied to these claims. While it may be contended on plaintiffs' behalf that Robert Hallal's specific claims against Sheriff Jessie Hopkins and Lois Penn were not actually determined and necessarily decided in their favor in *Hallal I*, the weight of authority recognizes that the question of whether collateral estoppel applies may turn on whether the party against whom the doctrine is asserted has had a full and fair opportunity to litigate the issue. If so, then collateral estoppel would apply. *See United States v. Mendoza*, 464 U.S. at 158 n. 3, 104 S.Ct. at 571 n. 3. Robert Hallal fully and vigorously litigated the matters pertaining to claims 1, 2 and 11 in *Hallal I*, calling Sheriff Jessie Hopkins and Lois Penn to testify, as well as Keith Tillman. These claims are identical to Robert Hallal's previously litigated claims against Keith Tillman and are claims which had to be decided in order to support the judgment in *Hallal I*. Finally, this court can ascertain no special circumstance(s) that would render preclusion of these particular claims inappropriate or unfair. *See United States v. Shanbaum*, 10 F.3d 305 (5th Cir.1994); *Universal American Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir.1991) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–32, 99 S.Ct. 645, 649–52, 58 L.Ed.2d 552 (1979)). These conditions being satisfied, issue preclusion will prohibit a party from seeking another determination of the litigated issue in a subsequent action. *Shanbaum*, at 311.

However, Robert Hallal also complains of matters which were not raised in *Hallal I*. Specifically, Robert Hallal has asserted against Jessie Hopkins and Lois Penn, as well as Keith Tillman, various claims not addressed in *Hallal I* such as visitation policies, handling of prisoner mail, skimming of profits from the jail commissary, denial of photographs, denial of privacy, and denial of equal protection. This court finds that these are matters which were not fully and vigorously litigated in *Hallal I* and are not identical to Robert Hallal's previously litigated claims against Keith Tillman. Nor are these claims which had to be decided in order to support the judgment in *Hallal I*. Therefore, these issues are not precluded and must be considered on their respective merits.

## IV. *MARY HALLAL'S DEPRIVATION OF PROPERTY CLAIM*

### A. *Defendants' Argument*

According to the defendants, Mary Hallal's assertion that legal documents, photographs and correspondence were taken from her when she entered MCDC constitutes a deprivation of property claim. Defendants cite the case of *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908, 1914–15, 68 L.Ed.2d 420 (1981), which held that a prisoner has no Fourteenth Amendment deprivation of property claim under 42 U.S.C. § 1983 where there is an adequate post-deprivation remedy under state law. *Id.*, 451 U.S. at 543–44, 101 S.Ct. at 1917. In *Hudson v. Palmer*, 468 U.S. 517, 535–37, 104 S.Ct. 3194, 3204–05, 82 L.Ed.2d 393 (1984), the United States Supreme Court concluded that adequate state post-deprivation remedies applied to instances of intentional conduct as well as negligent conduct, thereby extending the *Parratt* holding to cases where the plaintiff's conduct might be viewed as intentional rather than negligent. *Parratt* has been overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986) (overruling *Parratt*'s holding that lack of due care by a state official may deprive an individual of life, liberty or property under the Fourteenth Amendment), but the "lack of due care" issue is not present in the instant case.

Relying on *Parratt*, a decision based on the Nebraska State Tort Claims Act,[9] the defendants contend that there are adequate post-deprivation remedies under Mississippi law for the taking of property by state officials. First, say defendants, Mary Hallal could have sued the defendants for conversion. To accomplish this, say defendants, Mary Hallal could have sued Madison County, Mississippi, under Miss.Code Ann. § 11–45–17 (1972)[10] and recovered damages under § 25–1–47 (1972),[11] as amended, which provides that municipalities (local governments) may defend against claims, civil or criminal, negotiate settlements and/or pay judgments from public funds. Although the statute refers to "municipalities," boards of supervisors are enabled by § 25–1–47 to defend themselves from claims asserted against them in their official capacities. *See Richardson v. Canton Farm Equipment, Inc.*, 608 So.2d 1240 (Miss.1992) (holding that members of a county board of supervisors are empowered to employ counsel and defend themselves when sued in causes arising out of their official position where they have a colorable

defense and present the defense in good faith, citing Miss.Code Ann. § 25–1–47). Therefore, say defendants, inasmuch as Mississippi law provides adequate post-deprivation remedies for any taking of property by state officials such as MCDC personnel, it follows pursuant to *Parratt* that Mary Hallal has no cause of action under 42 U.S.C. § 1983 for her deprivation of property claims.

### B. *Plaintiffs' Response*

Mary Hallal contends that she did not know of any post-deprivation remedies under Mississippi law and that she should not be held accountable for failing to pursue them because she was denied access to the MCDC law library by Keith Tillman.[12] Moreover, says Mary Hallal, state courts do not require exhaustion of remedies when a petitioner cannot intelligently select the proper procedure, citing *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). In *Wilwording*, the petitioners sought habeas corpus relief in federal court pursuant to 28 U.S.C. § 2254,[13] asserting claims pertaining

9. Chapter 81, Article 8,209 of the Nebraska Tort Claims Act provides that "[t]he State of Nebraska shall not be liable for the torts of its officers, agents, or employees, and no suit shall be maintained against the state, any state agency, or any employee of the state on any tort claim except to the extent, and only to the extent, provided by the State Tort Claims Act. The Legislature further declares that it is its intent and purpose through such act to provide uniform procedures for the bringing of tort claims against the state or an employee of the state and that the procedures provided by such act shall be used to the exclusion of all others."

10. Mississippi Code Annotated § 11–45–17 provides that "[a]ny county may sue and be sued by its name, and suits against the county shall be instituted in any court having jurisdiction of the amount sitting at the county site; but suit shall not be brought by the county without the authority of the board of supervisors, except as otherwise provided by law."

11. Mississippi Code Annotated § 25–1–47 provides as follows:
 (1) Any municipality of the State of Mississippi is hereby authorized and empowered, within the discretion of its governing authorities, to investigate and provide legal counsel for the defense of any claim, demand, or action, whether civil or criminal, made or brought against any state, county, school district, or municipal officer, agent, servant, em-

ployee, or appointee as a result of his actions while acting in the capacity of such officer, agent, servant, employee, or appointee; and such municipality is hereby authorized to pay for all costs and expenses incident to such investigation and defense.
 (2) Any municipality of this state is hereby authorized and empowered, within the discretion of its governing authorities, to pay and satisfy any negotiated settlement of a claim or any judgment, fine, or penalty which may be made, assessed, or levied by any court against any municipal agent, officer, servant, employee, or appointee as a result of any actions of such municipal agent, officer, servant, employee, or appointee while acting as such.

12. Mary Hallal says in paragraph 57 of the complaint that her requests to attend the law library jointly with Robert Hallal were denied by Keith Tillman. She does not assert that she was denied all access to the law library.

13. Title 28 U.S.C. § 2254 provides in pertinent part that:
 (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the

to conditions of confinement. However, the *Wilwording* plaintiffs' § 2254 petition also could be construed as a civil complaint under § 1983 seeking relief for alleged violations of constitutional rights. The United States Supreme Court held that in instances such as this a habeas corpus petitioner would not be required to exhaust habeas corpus remedies provided by state law, especially where it could not be shown that the State of Missouri ever had granted a habeas corpus hearing to a petitioner alleging claims pertaining to conditions of confinement. *Wilwording,* 404 U.S. at 250–51, 92 S.Ct. at 409. In the instant case, Mary Hallal does not seek habeas corpus relief. Instead, pursuant to § 1983, she asserts tort claims framed as constitutional violations for which there may be adequate state court remedies.

### C. Court's Analysis

Firstly, this court finds no merit in Mary Hallal's contention that the United States Supreme Court's decision in *Wilwording* precludes the necessity of showing that a state's common law remedies are inadequate as post-deprivation claim remedies. *Wilwording* dealt with exhaustion of state habeas corpus remedies prior to pursuing the matter in federal court. The instant case seeks damages for alleged torts of constitutional dimension pursuant to § 1983. The plaintiffs seek no habeas corpus relief in this complaint. Secondly, regarding Mary Hallal's assertion that she cannot be held accountable for failing to pursue state post-deprivation remedies due to being denied joint access to the law library and to the courts at MCDC, this court finds no merit to this contention. Mary Hallal's "access to the courts" claim shall be discussed presently, after this court addresses her deprivation of property claim.

■ Mary Hallal says that she was deprived of her property when she initially entered MCDC and that this violated her First Amendment rights under the United States Constitution. Of course, Mary Hallal does not contend that other inmates first entering MCDC were not subjected to this same form of confiscation, or that the confiscation was conducted for any other purpose than to confiscate contraband. Hence, Mary Hallal has stated no First Amendment claim since she does not show that the confiscation of her property was conducted for some improper purpose or that she alone was singled out for this type treatment. *Marshall v. Norwood,* 741 F.2d 761, 763 (5th Cir.1984).

■ Next, Mary Hallal contends that her right to privacy under the Fourth Amendment was violated by the confiscation of her property. This claim is without merit, especially in view of the United States Supreme Court's pronouncement in *Hudson v. Palmer* that "[s]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and ... accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.,* 468 U.S. at 526, 104 S.Ct. at 3200. *See Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir.1993) (noting that the Fourth Amendment protects neither a prisoner's privacy interest in his prison cell nor his possessory interest in personal property contained in his cell).

■ Finally, Mary Hallal contends that her due process rights under the Fifth and Fourteenth Amendments have been violated. The MCDC is an arm of the State of Mississippi. Where a state actor seeks to impose some punishment without an adjudication, the pertinent constitutional guarantee to be considered is the due process clause of the Fourteenth Amendment. *See Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977). If a state provides an adequate post-deprivation remedy for intentional as well as negligent deprivation, then the Fourteenth Amendment is not violated. *Marshall v. Norwood,* 741 F.2d at 764, citing *Hudson v. Palmer,* 468 U.S. at 529–31, 104 S.Ct. at 3202. The defendants contend that such adequate post-deprivation remedy is provided under Mississippi law pursuant to Miss.Code Ann. § 11–

judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of

available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

45–17 (1972) and § 25–1–47 (1972). The burden is on the plaintiff to show that the remedy provided by state law is not adequate. *Id.* at 764. Mary Hallal contends only that she was not aware of the state law remedies and was not informed of them by the defendants. Clearly, she has not met her burden of showing inadequacy of the remedy provided. Therefore, this court finds that Mary Hallal's claim of an unconstitutional deprivation of her personal property, other than her legal papers, by the defendants is not well taken and that the defendants are entitled to summary judgment as a matter of law on this claim.

■■■■ Additionally, this court has closely reviewed this claim to determine whether there is contained therein any matter which might be construed to be an assertion on behalf of Robert Hallal and has found none. Robert Hallal has no standing to assert a claim with regard to the personal property of Mary Hallal. "Standing" under Article III of the United States Constitution [14] requires an allegation of present or immediate injury in fact, where the party has "alleged such personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens presentation of issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In other words, there must be some causal connection between the asserted injury and challenged action, and the injury must be of the type "likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). *See Phillips Petro. Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Canfield Aviation, Inc. v. National Transp. Safety Bd.,* 854 F.2d 745 (5th Cir.1988). Regarding the instant claim, there is no injury which Robert Hallal may assert as the result of Mary Hallal's personal property being confiscated. Therefore, this court concludes that Mary Hallal's deprivation of property claim does not state a claim on behalf of Robert Hallal.

**14.** U.S. Const. art. III, § 2, cl. 1 provides:
 The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitu-

## V. THE MATTER OF MARY HALLAL'S LEGAL PAPERS

### A. Defendants' Argument

Defendants contend that seizure of legal papers by MCDC personnel should be treated like any other deprivation of property claim governed by the *Parratt* and *Hudson* decisions. Citing *Wolff v. McDonnell,* 418 U.S. 539, 574–76, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974), defendants argue that Fourteenth Amendment due process claims based on access to the courts have not been extended by the United States Supreme Court to apply further than protecting the ability of an inmate to prepare a petition or complaint. Therefore, say defendants, inasmuch as Mary Hallal does not claim that she could neither prepare nor transmit legal documents while at the MCDC, she did not suffer a violation of her Sixth Amendment rights. Arguing that no constitutional claim has been raised, defendants ask that summary judgment be granted with regard to Mary Hallal's seizure of legal documents claim.

### B. Plaintiffs' Response

Mary Hallal says only that her legal papers were taken from her when MCDC personnel confiscated her personal belongings on the occasion of her initial incarceration in that facility, thereby preventing her from preparing and sending legal documents to the court.

### C. Court's Analysis

■■■■ While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the United States Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson,* 3 F.3d 816, 821 (5th Cir.1993), citing *Wolff v. McDonnell,* 418 U.S. 539, 574–76, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). Paragraph 9 of the plaintiffs' complaint says only that Mary Hallal was denied possession of

tion, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; ...

the legal papers she had with her when she entered MCDC. Mary Hallal does not contend that MCDC personnel prevented her from preparing and mailing legal documents to the court, nor does she assert that MCDC personnel acted to delay the mailing of her legal documents. *See Houston v. Lack,* 487 U.S. 266, 270–76, 108 S.Ct. 2379, 2382–85, 101 L.Ed.2d 245 (1988). However, because courts are required to construe the pleadings of a pro se litigant liberally, *see Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982), and *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), this court finds that although Mary Hallal did not specifically assert that MCDC personnel prevented her from preparing and mailing legal documents, this cause of action could exist if, after hearing on the matter, any facts alleged by Mary Hallal are found to be true.

## VI. *MARY HALLAL'S TRANSFER TO ANOTHER FACILITY*

### A. *Defendants' Argument*

Mary Hallal complains that she was moved from MCDC to the Simpson County Jail in violation of her constitutional rights. According to the defendants, Mary Hallal does not allege that Keith Tillman moved her to another facility in retaliation for her exercising her substantive constitutional rights. Moreover, defendants argue that inasmuch as Mary Hallal was a federal prisoner instead of a state prisoner, only the federal authorities had the decision-making authority to move her to other facilities. Finally, defendants argue that Mary Hallal had no liberty interest in staying at the MCDC. Hence, say defendants, she had no right to any due process hearing before being moved to another facility, citing *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (holding that the due process clause does not protect a properly convicted prisoner against transfer from one institution to another).

### B. *Plaintiffs' Response*

Mary Hallal contends that the defendant Keith Tillman is responsible at least in part for transferring her from the MCDC to the Simpson County Jail in violation of her constitutional rights. Thus, says Mary Hallal, Tillman is liable to her under 42 U.S.C. § 1983.

### C. *Court's Analysis*

■ The due process clause of the Fourteenth Amendment does not protect a duly convicted prisoner against transfer from one institution to another. *Meachum v. Fano,* 427 U.S. 215, 223–25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The United States Supreme Court has repeatedly found that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests. Prison officials need broad administrative authority because running a prison is an "extraordinarily difficult undertaking." *Mitchell v. Sheriff Department,* 995 F.2d 60, 62–63 (5th Cir.1993), citing *Wolff v. McDonnell,* 418 U.S. at 564–66, 94 S.Ct. at 2979; *Jackson v. Cain,* 864 F.2d 1235, 1247 (5th Cir.1989), citing *Hewitt v. Helms,* 459 U.S. 460, 466–68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Transfer from a preferable to an inferior prison does not in itself state a due process claim because, in the absence of an appropriate state regulation, a prisoner has no liberty interest in residence in one prison or another. *Jackson v. Cain,* 864 F.2d at 1250, citing *Meachum v. Fano,* 427 U.S. at 223–25, 96 S.Ct. at 2538.

■ Mary Hallal has dismissed her claims against the Sheriff of Simpson County, Mississippi, Lloyd Jones, thereby eliminating the only defendant associated with her conditions of confinement claim against the Simpson County jail. Moreover, Mary Hallal has named no defendant associated with her conditions of confinement at the Forrest County jail, the facility to which she was subsequently transferred after her sojourn in the Simpson County Jail. Finally, Mary Hallal's claims against United States Marshal Ike Durr, the official responsible for her transfer, have been dismissed. Therefore, the only claim left pertaining to Mary Hallal's being transferred from the MCDC to the Simpson County Jail is her assertion that Keith Tillman may have assisted those who were responsible for her transfers. This as-

sertion raises no constitutionally cognizable claim under § 1983. Therefore, the defendants' motion for summary judgment on this issue is granted.

The above claim involves only the assertions of Mary Hallal. Robert Hallal states no claims with regard to his legal papers, and, for the reasons stated above under the deprivation of property issue, Robert Hallal has no standing to assert any claim with regard to Mary Hallal's legal papers.

## VII. THE MATTER OF VISITATION POLICY

### A. The Defendants' Argument

Mary Hallal contends that her constitutional rights were violated by the MCDC visitation policy which, according to Mary Hallal, prevented her from visiting with her stepson and with Robert Hallal. Construing the plaintiffs' pleadings liberally, this claim also may be asserted by Robert Hallal for MCDC's preventing him from visiting with Mary Hallal and her stepson. The defendants note that children, twelve years old and younger, are not allowed to visit prisoners at the MCDC. This policy exists, say defendants, because of the security risks associated with children being in the same room at the same time as adults during visiting hours. Defendants note that Mary Hallal's stepson was within the prohibited age range at the time she was housed at MCDC. Defendants argue that Mary Hallal does not contend that her stepson ever attempted to visit her, but, say defendants, even if he had attempted to visit her, Mary Hallal had no constitutional right to visitation while at the MCDC, citing *Jones v. Diamond*, 636 F.2d 1364, 1376–77 (5th Cir.1981) (en banc), *cert. dismissed sub nom., Ledbetter v. Jones*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). According to the defendants, Mary Hallal's visiting privileges could be restricted without violating her constitutional rights if there was a legitimate governmental purpose for doing so. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).

Defendants defend their policy of not permitting children under twelve years of age to visit with inmates of the MCDC, saying that the policy is similar to that adopted by hospitals and other public institutions. The MCDC has adopted this policy, say defendants, because twelve-year-old children should not be exposed to the security risks associated with outside visitation at a jail. Defendants contend that this policy is reasonably related to the governmental objective of protecting minors from security risks; hence, the policy does not violate Mary Hallal's constitutional rights.

Defendants also argue that since Mary Hallal had no constitutional right to visit with anyone while incarcerated at the MCDC, it follows that she had no right to visit with her husband, Robert Hallal, who also was a prisoner at the MCDC, nor he with her. Hence, say defendants, summary judgment should be granted on Mary Hallal's visitation claims.

### B. Plaintiffs' Response

The plaintiffs argue that the MCDC visitation policy, particularly that policy which prevents children under twelve from visiting inmates, is unfair because trustee inmates are permitted visitation with their young children while non-trustee inmates are not permitted such visitation. According to the plaintiffs, this policy constitutes a violation of equal protection. Moreover, argue plaintiffs, the MCDC visitation area is partitioned in such a manner as to prevent contact between an inmate and a visitor. The plaintiffs also contend that the MCDC policy of permitting only twenty-minute visits is inadequate and that the plaintiffs should have been permitted visitation with one another.

### C. Court's Analysis

Visitation privileges are a matter subject to the discretion of prison officials. *Jones v. Diamond*, 636 F.2d 1364, 1376–77 (5th Cir.1981), *cert. dismissed sub nom., Ledbetter v. Jones*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), quoting *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir.), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975). Moreover, if a prison regulation impinges on a prisoner's constitutional rights, it is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct.

2254, 2261, 96 L.Ed.2d 64 (1987). Prisoners do not possess a substantive liberty interest arising under the United States Constitution in unfettered visitation. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). Accordingly, courts are particularly deferential to prison authorities in matters involving visitation. *See Doe v. Sparks,* 733 F.Supp. 227, 230 (W.D.Pa.1990).

In *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), the Supreme Court ruled that an inmate has no constitutional right to contact visitation. The Court held that if a restriction is not punitive but merely incidental to, and reasonably related to, a legitimate government objective, and not excessive to its purpose, there is no constitutional violation. Visitors of inmates are viewed as the chief source of contraband, and the prison officials believe inmates found to use marijuana are more likely to persuade their visitors to bring it to them. *Harmon v. Auger,* 768 F.2d 270 (8th Cir.1985). Therefore, this court finds that a legitimate penological purpose is being served by the manner in which MCDC partitions its visiting area. Likewise, the policy of permitting visitation for a period of only twenty minutes and the refusal of the defendants to permit Mary Hallal visitation with fellow inmate Robert Hallal are matters within the sound discretion of the MCDC officials. *Jones v. Diamond,* 636 F.2d at 1376.

Of additional significance, it has been established in prior litigation that Robert Hallal was being held in lockdown status at the time for security reasons, particularly because of his prior escape attempt. Therefore, this court finds that a legitimate penological purpose was being served by the manner in which MCDC kept Robert Hallal in custody. This court finds this to be within the sound discretion of the MCDC officials, even if keeping Robert Hallal in lockdown kept him from visiting with Mary Hallal. *Jones v. Diamond,* 636 F.2d at 1376.

However, Mary Hallal complains that visitation with her son (stepson) was completely forbidden by the MCDC policy barring visitation by children under twelve years of age. The defendants respond that this policy is justified for security reasons. Defendants also contend that Mary Hallal's son (stepson) never attempted to visit her while she was incarcerated at MCDC. In *Jones v. Diamond,* the Fifth Circuit stated, "[t]here can be no doubt that (an inmate's desire to touch and hold family members) is a natural human desire and that deprivation of it is serious." *Id.* at 1377. Furthermore, at least one district court within the Fifth Circuit has held that a visitation ban on children under 14 had to be abolished because it was unconstitutional. *McMurry v. Phelps,* 533 F.Supp. 742, 764–65 (W.D.La. 1982), *overruled on other grounds, Thorne v. Jones,* 765 F.2d 1270 (5th Cir.1985); *also see Valentine v. Englehardt,* 474 F.Supp. 294, 302 (D.N.J.1979) (county jail ban on visitation by children held unconstitutional). Additionally, in a concurring opinion written by Circuit Judge Murnaghan for the Fourth Circuit, Judge Murnaghan stated that "those who operate detention facilities, whether in the form of local jails or prisons, should be aware that the absolute prohibition on visitation by a detainee's minor children ... is almost certainly unconstitutional." *Buie v. Jones,* 717 F.2d 925 (4th Cir.1983), citing *Jones v. Diamond,* 636 F.2d 1364, 1377 n. 12 (5th Cir.1981) (en banc), *cert. granted,* 452 U.S. 959, 101 S.Ct. 3106, 69 L.Ed.2d 970 (1981), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).

The defendants admit that at the time of Mary Hallal's incarceration at MCDC, children, twelve years old and younger, were not allowed to visit prisoners at the MCDC. This policy is justified, say defendants, because of the security risks associated with children being in the same room at the same time as adults during visiting hours. Apparently this policy is still in effect at MCDC. As noted in *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), "when an institutional restriction infringes a specific constitutional guarantee ..., the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." For instance, in *Inmates of the Allegheny*

*County Jail v. Pierce*, 612 F.2d 754 (3rd Cir.1979), the prohibition of contact visits was found to be a reasonable response to legitimate concerns of prison security because the policy did not prevent inmates from visiting with members of their families and others. Only physical contact with those individuals was not permitted. So, the restriction was found to be specifically tailored to meet the perceived security problem. Therefore, inasmuch as the defendants admit that MCDC's ban on visitation by children under twelve years of age is absolute, this court finds that an evidentiary hearing must be conducted to determine the factual basis for the policy and whether the policy is an exaggerated and overbroad response to security concerns under the factual circumstance of this case. The hearing on this issue involves the plaintiffs Mary Hallal and Robert Hallal and the defendants Sheriff Jessie Hopkins, Keith Tillman and Lois Penn.

## VIII. MARY HALLAL'S REQUEST FOR LEGAL ASSISTANCE FROM ROBERT HALLAL

### A. The Defendants' Argument

Defendants contend that Mary Hallal has no constitutional right to receive legal assistance from Robert Hallal pursuant to her specific request for his services while incarcerated at the MCDC, citing *Gassler v. Rayl*, 862 F.2d 706 (8th Cir.1988), a case holding that transfer of an inmate who had provided legal assistance to other inmates did not violate the constitutional rights of any of the inmates where other "jailhouse lawyers" were available to assist the prison population.

### B. Plaintiffs' Response

Mary Hallal contends that she was constitutionally entitled to have time in the MCDC law library with Robert Hallal. Ostensibly, Mary Hallal is attempting to assert a "meaningful access to the court" claim cognizable under § 1983.

### C. Court's Analysis

 Access to a law library can be narrowed in many ways without constitutional difficulty. *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir.1994). If Mary Hallal asserted that she was involved in litigation which made access to the law library at MCDC necessary and all access was nonetheless denied, then her claim would be cognizable. *Id.* at 9–10. However, Mary Hallal's actual assertion is that she was denied access to Robert Hallal for legal assistance and that this denial resulted in her being denied meaningful access to the court. Therefore, inasmuch as Mary Hallal does not assert that she was denied all assistance, this court agrees with the defendants that, in the circumstances of this case, denial of legal assistance from a specific inmate, namely Robert Hallal, did not violate Mary Hallal's constitutional rights. Inmates should be able to seek legal assistance from other inmates if the state prison facility does not provide some reasonable alternative. *Wolff v. McDonnell*, 418 U.S. 539, 579–80, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). However, it is well established that adequate law libraries are a constitutionally acceptable method of assuring inmates meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 829–31, 97 S.Ct. 1491, 1499, 52 L.Ed.2d 72 (1977). Mary Hallal does not attack the adequacy of the MCDC law library. Therefore, this court finds no constitutional violation cognizable under § 1983 and summary judgment shall be granted the defendants on this claim. Moreover, for the same reasons above stated, this court finds no § 1983 claim asserted on behalf of Robert Hallal inasmuch as he would have no right to legal assistance from Mary Hallal.

## IX. PROBLEMS WITH THE HALLALS' MAIL

### A. The Defendants' Argument

Defendants argue that Sheriff Jessie Hopkins and Keith Tillman could place restraints on the exchange of non-legal mail between prisoners and outside persons and between prisoners within the MCDC. Those restraints, say defendants, only had to be reasonably related to a legitimate governmental interest. *Brewer v. Wilkinson*, 3 F.3d 816, 824–25 (5th Cir.1993), citing *Turner v. Safley*, 482 U.S. at 87–89, 107 S.Ct. at 2261; and *Thornburgh v. Abbott*, 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989).

In the instant case, two letters addressed to Mary Hallal from Robert Hallal which were inspected with other incoming mail were discovered to have some form of foreign substance in them. The letters were confiscated. Defendants note, and the plaintiffs agree, that the letters had something in them and that MCDC personnel had the right and duty to inspect incoming letters. This confiscation, say defendants, presents no constitutional issue and instead constitutes a deprivation of property claim controlled by the *Parratt* and *Hudson* decisions. Therefore, say defendants, if Mary Hallal and Robert Hallal had adequate post-deprivation remedies under Mississippi law for the taking of these two letters, their § 1983 claims based on the confiscation of these letters should be dismissed.

### B. *Plaintiffs' Response*

Plaintiffs argue that their constitutional rights were violated when Keith Tillman refused to deliver the letters in question after they were inspected and confiscated. Although they have no quarrel with the inspection of the letters, Mary Hallal and Robert Hallal contend that the MCDC personnel should have delivered the letters after the contraband material had been removed.

### C. *Court's Analysis*

There was a question in *Hallal I* whether the substance was merely contained in the letters or whether it was infused upon the paper itself. The parties have not made this clear in the instant case. Nevertheless, Mary Hallal and Robert Hallal agree that the letters had something in them, and they find no fault with the inspection by MCDC personnel of incoming letters. Their only quarrel is with Keith Tillman's decision not to deliver the letters after they were inspected.

Of course, there may have been good reason for not delivering the letters if the contraband substance was actually infused upon the paper. When determining constitutional validity with regard to a prison's practices that impinge on a prisoner's rights with regard to mail, the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest. *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir.1993), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994). Prison officials may place restraints on the exchange of non-legal mail between prisoners and outside persons and between prisoners within the prison so long as the restraint is related to a legitimate governmental interest. *See Brewer v. Wilkinson*, at 825, citing *Turner v. Safley*, 482 U.S. at 87–89, 107 S.Ct. at 2261; and *Thornburgh v. Abbott*, 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989). Certainly, the discovery and confiscation of contraband by MCDC officials serves a legitimate and reasonable penological interest. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993), citing *Thornburgh v. Abbott* (jail has a legitimate security interest in opening and inspecting mail for contraband). However, the issue before this court is whether the letter itself could have been delivered after the contraband was confiscated. The defendants have not made clear the factual circumstances that necessitated confiscation of the letter itself in addition to the contraband. Thus, this court directs that this matter be explored at an evidentiary hearing.

### X. *THE MATTER OF COMMISSARY PROFITS*

Both Robert Hallal and Mary Hallal claim that the defendants Sheriff Jessie Hopkins and Keith Tillman "skim profits" from the MCDC commissary. According to the complaint, Sheriff Jessie Hopkins and Keith Tillman are supposed to use profits from the commissary to purchase recreational equipment and televisions for use by the inmates of MCDC. The defendants have not responded to this issue in their briefs. Therefore, the defendants' motion for summary judgment on this issue is denied, and this matter shall be addressed at the evidentiary hearing.

### XI. *THE MATTER OF EQUAL PROTECTION*

Robert Hallal and Mary Hallal each claim that they, as federal detainees at MCDC, are victims of MCDC policies which discriminate in favor of state prisoners. The defendants have not responded to this claim. Therefore,

the defendants' motion for summary judgment on this issue is denied, and this matter also shall be addressed at the evidentiary hearing.

### CONCLUSION

Therefore, this court finds that the claims of the plaintiff Robert M. Hallal which were litigated in *Hallal I*, cruel and inhuman punishment and denial of due process (claims 1, 2 and 11 in the instant complaint), are barred by the doctrine of res judicata. Additionally, these same claims against the defendants Sheriff Jessie Hopkins and Lois Penn are barred by collateral estoppel. Summary judgment also is granted in favor of the defendants on Mary Hallal's claim of deprivation of personal property, other than her legal papers; on Mary Hallal's pertaining to her transfer to another prison facility; on the claims of Robert Hallal and Mary Hallal pertaining to their visitation with each other and the MCDC's twenty-minute limitation on visits; and on the claim of Robert Hallal and Mary Hallal pertaining to denial of access to the courts by being denied legal assistance from each other. An evidentiary hearing pertaining to the following unresolved issues shall be conducted before this court on the 13th day of April, 1995, at 8:30 o'clock A.M., on the issues of Mary Hallal's visitation with her stepson; the matter of Mary Hallal's deprivation claim regarding her legal papers; on the matter of undelivered mail; on the matter of how MCDC commissary profits are applied; and on the matter of equal protection for federal detainees.

**SO ORDERED.**